El Pueblo, Demandante y Apelado, *v.* Barrios, Acusado y Apelante.

Apelación procedente de la Corte de Distrito de Mayagüez en causa por homicidio voluntario.

No. 896.—Resuelto en mayo 12, 1916.

Homicidio Voluntario—Acusación—Nueva Acusación—Enmiendas a la Acusación—Sobreseimiento de la Acusación.—Una acusación imputando un delito de homicidio voluntario fué presentada dentro del término prescrito por el artículo 448 del Código de Enjuiciamiento Criminal. A una moción para enmendar hecha el día señalado para juicio, aquella acusación fué sobreseída y una nueva presentada. En ese mismo día fué declarada sin lugar una moción para que se sobreseyera la acusación, basada en dicho artículo, y se celebró el juicio sin más oposición por parte del acusado. *Se resolvió:* Que como el acusado no estuvo detenido para responder de la comisión del delito hasta después de los 60 días de haberse concedido el permiso para enmendar, dicho artículo no es de aplicación; que la manera de enmendar toda alegación es presentando una nueva y no hay razón para que las acusaciones estén excluidas de esta regla; que bajo la teoría de que la acusación enmendada era una completamente nueva, el objeto de dicho artículo fué llevado a cabo al sobreseerse la primera acusación; que de acuerdo con el artículo 452 de dicho código, el sobreseimiento de la primera acusación no constituye impedimento para la presentación de la segunda.

Pruebas—Declaración de un Moribundo—Res Gestæ—Debilidad—Peso de la Prueba—Prueba de Refutación—Anticipación de Defensa—Cuestión de la Incumbencia del Jurado.—Una declaración en artículo de muerte forma parte del hecho consumado (*res gestæ*) y no debe ser rechazada simplemente porque exista otra prueba directa. La objeción de que el moribundo no podía haber tenido perfectamente sana su inteligencia puesto que había prueba de su estado de debilidad, se dirige al peso de la prueba y es de la incumbencia de la corte inferior. La objeción de que la declaración en artículo de muerte contiene materia de refutación en anticipación de una defensa va dirigida contra su credibilidad y es de la incumbencia del jurado.

Defensa Propia—Amenazas—Carácter del Interfecto.—Una amenaza hecha por la víctima contra el acusado pero de la cual éste no tenía conocimiento no pudo despertar en él un temor que sirva de fundamento a la alegación de defensa propia. Puede admitirse prueba de refutación para demostrar el buen carácter de la víctima después de haberse hecho la impugnación al mismo.

Instrucciones al Jurado—Homicidio Voluntario—Deber de la Persona Acometida—Evasión—Ataque en Sitio en que la Persona Acometida Tiene Derecho a Estar—Defensa Propia.—La instrucción de que un hombre en un camino público está obligado a huir de un agresor si puede hacerlo así sin riesgo, es errónea. Un hombre no está justificado en buscar una pelea, pero cuando sin culpa suya es atacado en un sitio en que tiene derecho a estar, de tal modo que su vida corre peligro inminente, no está obligado a huir, ni a tomar en consideración ese hecho, sino que puede permanecer en

el sitio y defenderse hasta causar la muerte del agresor si fuere razonablemente necesario.

ID. — EXCEPCIONES — INSTRUCCIONES ADICIONALES — ERROR FUNDAMENTAL. — El hecho de que no se formulara excepción a las instrucciones tal como fueron dadas y de que el juez negara instrucciones adicionales presentadas por escrito porque no le fueron entregadas antes de empezar él sus instrucciones, no impide a esta corte revisar las instrucciones tal como fueron trasmitidas al jurado para ver si se ha cometido error fundamental alguno.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. Angel A. Vázquez y José de Diego.*

Abogado del apelado: *Sr. Salvador Mestre, Fiscal.*

EL JUEZ ASOCIADO SR. WOLF emitió la opinión del tribunal.

En una acusación que fué formulada en la Corte de Distrito de Mayagüez se imputaba a Rogelio Barrios la comisión de un delito de homicidio voluntario del cual fué declarado culpable. Se alega que la corte cometió error por no haber sobreseído el proceso de conformidad con el artículo 448 del Código de Enjuiciamiento Criminal que ordena dicho sobreseimiento cuando no se ha presentado la acusación dentro del término de sesenta días desde la fecha en que una persona es detenida para responder de un delito público. Se ha admitido que fué presentada oportunamente una acusación original. El juicio de la causa fué señalado para el día 4 de mayo, 1915. Ese día compareció ante la corte el Fiscal y solicitó permiso para presentar una acusación enmendada con el fin de alegar correctamente la fecha en que se cometió el delito. La moción fué concedida, la acusación anterior sobreseída y cancelada la fianza prestada por el acusado. Inmediatamente después fué formulada una nueva acusación subsanando el defecto y haciendo enmiendas en otros particulares de menos importancia. Entonces el acusado presentó una moción de sobreseimiento por el fundamento al cual se ha hecho referencia. La corte declaró sin lugar dicha moción y el caso fué juzgado el mismo día. El acusado no solicitó prórroga ni formuló ninguna queja en la corte inferior o ante este tribunal por el fundamento de sorpresa, o por no estar listo para el juicio con motivo de la enmienda.

El objeto del artículo 448, es asegurar al acusado una rápida notificación y juicio de su causa. El acusado no fué demorado en manera alguna por la acción de la corte al permitir que se hiciera la enmienda. La acusación original fué presentada oportunamente. Si hubiera sido detenido el acusado para responder de la comisión del delito por un término de sesenta días después de concedido el permiso para hacer enmiendas, podría ser aplicable al caso el artículo 448, pero generalmente ese artículo no es de aplicación a una acusación enmendada. La corte tendría alguna discreción. Hacemos referencia a los casos de *El Pueblo* v. *Rivera,* 9 D. P. R. 439; *Ex parte Arroyo,* 15 D. P. R. 127; *El Pueblo* v. *Ayala,* 19 D. P. R. 936, por ser casos que tienen más o menos semejanza con esta cuestión.

En el acto de la vista el apelante insistió en el hecho de que el Gobierno, en vez de hacer enmiendas, presentó enteramente una nueva acusación y, por tanto, que la segunda o verdadera acusación no fué presentada dentro de los sesenta días desde que se hizo el arresto. Generalmente la forma en que se enmienda una alegación es presentando una nueva y no hay razón alguna por la cual deban quedar excluídas de esta práctica las acusaciones. En el supuesto de que la acusación presentada era enteramente nueva aparece que la primera acusación en realidad fué sobreseída y archivada y cumplido el objeto principal del artículo 448. Al presentarse la segunda acusación el acusado inmediatamente estuvo listo para el juicio, no constituyendo impedimento legal para la presentación de la segunda acusación, según el artículo 452 del Código de Enjuiciamiento Criminal, el sobreseimiento de la primera acusación.

El segundo señalamiento de error se refiere a la admisión en evidencia de la declaración hecha por una persona en artículo de muerte (*dying declaration*). El apelante parece fundarse principalmente en su alegato, en el hecho de que existían otras pruebas tendentes a acreditar las mismas cuestiones referidas en dicha declaración. La corte tiene

cierta discreción en la admisión de prueba acumulativa, pero una declaración prestada por un moribundo (*dying declaration*) jamás debe ser rechazada porque exista simplemente otra prueba directa. La necesidad de estas declaraciones a la cual hacen referencia las decisiones, se relaciona con el hecho de que la declaración de la persona en particular, del moribundo, no puede obtenerse de otro modo y no depende de si otros testigos pueden prestar igual declaración o una parte de la misma. *People* v. *Fong Ah Sing,* 64 Cal. 253, 21 Pac. 233; 21 Cyc. 975. La declaración de una persona moribunda (*dying declaration*) forma parte del hecho consumado *res gestæ* en cuanto a la admisión de pruebas y se rige por principios semejantes.

Otra objeción que fué formulada a la declaración del moribundo era que el hombre que moría, no podía haber tenido perfectamente sana su inteligencia, como dice, puesto que varios testigos declaran acerca de su estado de debilidad. Pero no hubo prueba de que no fuera inteligente y de sano entendimiento. Y esta forma de objeción se dirige al peso de la prueba que fué suficiente para evitar que modifiquemos, por este fundamento, la acción tomada por la corte al admitir la declaración.

Se hizo otra impugnación a la declaración prestada por el moribundo, por contener materia de refutación. En ella se decía que cuatro o cinco testigos no estaban presentes en la fecha del ataque. El interfecto suponía de antemano que estas personas serían llamadas a sostener el caso del acusado. No sabemos cómo sabía el moribundo que estos testigos serían traídos a declarar, si bien ellos parecen haber estado relacionados con los sucesos conducentes al homicidio. Acaso contestando a preguntas que se le hicieron. Su declaración hasta pudo ser falsa. Esa era una cuestión de la incumbencia del jurado. La objeción realmente va dirigida contra la credibilidad de la declaración del moribundo y no contra el proceder de la corte al admitirla. Las anteriores

fueron las principales objeciones alegadas en el acto de la vista, pero discutiremos otras que han sido promovidas en el alegato.

Una manifestación hecha por un testigo tendía a mostrar que el interfecto Padilla tenía una fuerte animosidad contra Barrios y había dicho que si Barrios aparecía muerto sería a manos de Padilla. Pero el testigo negó que jamás hubiera comunicado esta amenaza a Barrios. La defensa propia fué la alegación del acusado y era evidente que si éste no hubiera tenido conocimiento de esa amenaza ella no hubiera podido despertar un temor razonable en él. La cuestión ha sido discutida extensamente en el caso de *El Pueblo* v. *Sutton,* 17 D. P. R. 345, estando de acuerdo en cuanto a este punto, tanto la opinión de la mayoría del tribunal como la disidente emitida por el Juez Asociado Sr. MacLeary.

La corte no cometió error al negarse a eliminar la prueba de refutación tendente a demostrar el buen carácter de Padilla, presentada después de la impugnación que se hizo del carácter del interfecto.

El siguiente error que ha sido alegado es que el veredicto del jurado es contrario a la prueba. No discutiremos este error con mayor extensión sino para decir que si no hubiera sido alegado ningún otro error hubo prueba tendente a mostrar que en una lucha el acusado mató a otro hombre y que de acuerdo con la prueba el jurado tenía derecho a decir que él no ejecutó el acto en defensa propia, como sostiene el apelante.

Existen varios señalamientos con respecto a las instrucciones. Con una sola excepción, no encontramos que haya habido error alguno. La corte expuso correctamente la ley relativa al delito de homicidio en general, y a los principios que regulan la defensa propia, pero incurrió en error al decir que un hombre parado en la carretera estaba obligado a huir de su agresor si podía hacer esto sin peligro. La corte dijo lo siguiente: "Cuando una persona es atacada en su propia' casa, en ese caso, según la ley, la persona agredida o acome-

tida no tiene obligación de retirarse, de huir y evitar el encuentro, la persona puede quedarse en su sitio y defender su casa contra el ataque violento de otra persona, y si es necesario, causar la muerte de su agresor, pero no es así en un camino público, en una carretera de Puerto Rico. En ese caso, es el deber de la persona evitar la necesidad de la muerte, y si puede evitarlo retirándose, saliendo huyendo de su agresor es su deber hacerlo.'' También informó la corte al jurado que ninguna persona está obligada a retirarse si al huir corre el riesgo de morir o de recibir daños corporales.

El artículo 209 del Código Penal prescribe que también podrá justificarse el homicidio cuando lo cometiere alguna persona en cualquiera de los casos siguientes:

''1. * * *

''2. * * *

''3. Cuando se comete en legítima defensa de dicha persona, o de la esposa o esposo, padre o madre, hijo, amo o sirviente de tal persona, siempre que hubiere motivos fundados para sospechar que existe el propósito de cometer un delito grave (*felony*), o de inferir grave daño corporal, o inminente riesgo de que tal propósito se realice; pero dicha persona, o la persona cuya defensa se intentare, si fuere el agresor, o estuviere empeñada en lucha mortal, deberá tratar de desistir de ella, antes de cometerse el homicidio.''

Interpretando un artículo equivalente, la Corte Suprema de California, a la cual seguimos generalmente en asuntos criminales, dijo que desde luego un hombre no estaba justificado en buscar una pelea, pero cuando un hombre sin culpa suya se veía de repente atacado, de tal modo que su vida o seguridad personal corre peligro inminente, no estaba obligado a huir o a tomar en consideración el hecho de huir, sino que podría permanecer en su sitio y defenderse hasta el punto de causar la muerte de su agresor si razonablemente era necesario. *People* v. *Newcomer,* 118 Cal. 273. La corte cita las decisiones de los casos de *People* v. *Lewis,* 117 Cal. 186; *People* v. *Hecker,* 109 Cal. 467, y la decisión de la Corte

Suprema de los Estados Unidos en el caso de *Beard* v. *United States,* 158 U. S. 550.   En el caso de *People* v. *Hecker, supra,* la corte se expresó en los siguientes términos:

"De modo que aunque el tener que matar, todavía tiene que ser debido a una necesidad absoluta, real o aparente, se considera como cuestión legal que existe esa necesidad absoluta cuando una persona sin culpa se encuentra en tal peligro inminente.   El derecho a permanecer en su propio lugar debe constituir un elemento de las instrucciones referentes a la necesidad de tener que ocasionar la muerte y del derecho de defensa propia."

En un número de los casos de California el acusado estaba en su misma casa o en su propio terreno, pero el lenguaje de la corte es de aplicación al caso más general en que un hombre está en un sitio en que tiene derecho a estar.   En *People* v. *Maughs,* 149 Cal. 253, el acusado era un empleado y la persona a quien se dió muerte se encontraba en su propia casa y la corte resolvió que el acusado no estaba en la obligación de huir.   Al comentar sobre este caso la Corte de Distrito de Apelaciones del Primer Distrito de California en el caso de *People* v. *Webber,* 147 Pac. 102, llamó la atención hacia el hecho de que en el caso de Maughs el hombre a quien se le dió muerte se encontraba en su propia casa y el acusado era un empleado y, por tanto, que de ahí se deducía que no importa dónde pueda estar una persona, si tiene derecho a estar allí y se le ataca ilegalmente puede quedarse en su puesto y matar en defensa propia a su adversario, cuando cree como hombre razonable que está en peligro de perder su vida o de recibir grave daño corporal a manos de su agresor.   Y cita la corte otros casos.

Algo parecido a la instrucción que dió la corte era la doctrina de la ley común, por lo menos como ha sido interpretada en algunas jurisdicciones, pero la regla ha sido interpretada de modo distinto en otros Estados.   Toda la materia ha sido considerada en la nota al caso de *State* v. *Gardner,* (Minn.) 2 L. R. A. (N. S.) 49.

Nuestro código ha sido tomado de California; el lenguaje del artículo transcrito es general y no vemos razón por la que hayamos de darle una interpretación que ha sido atribuída a la ley común. Por el contrario, si un hombre está en su derecho puede permanecer en su puesto. Desde luego que debe tener razón. No debe buscar deliberadamente un sitio para provocar a su adversario o esperarlo premeditadamente.

Hubo prueba en este caso tendente a demostrar que mientras el acusado iba por la carretera tenía que pasar por donde estaba Padilla, el hombre que fué muerto; que el acusado iba montado en una yegua; que la yegua estaba cansada; que el acusado se dió cuenta de que Padilla estaba para alcanzarlo con un machete y que el machete lo usaba en forma amenazadora; que él, el acusado, disparó por su espalda para desviar el ataque y dice el acusado que sin la intención de matar a Padilla. No expresamos nuestra opinión acerca de la credibilidad de estas manifestaciones, pero hubo prueba tendente a sostener lo dicho por el acusado, no solamente de otros de sus testigos, sino también de los testigos de la acusación y en la declaración del moribundo Padilla se admitía la posesión del machete.

No se formuló excepción alguna a la instrucción en la forma en que fué dada. Al terminarse las instrucciones el acusado ofreció a la corte un número de instrucciones por escrito en la que estaba incluída una acerca de lo que dice la ley con relación al hecho de tener que huir. La corte negó estas instrucciones solamente por el fundamento de que la regla de la corte exigía que las instrucciones por escrito debían ser presentadas antes de empezar el juez a instruir al jurado. Ello no impide que en uso de nuestras facultades revisemos las instrucciones que fueron dadas sin ser excepcionadas, para ver si ha sido cometido algún error fundamental por la corte inferior. *El Pueblo* v. *Lebrón,* resuelto en marzo 30, 1916. Esta facultad que hemos ejercitado con cautela, nos la confiere la ley de mayo 30, 1904.

Como existió prueba en el caso tendente a demostrar que el acusado se encontraba en un sitio en que tenía derecho a estar y en donde su defensa la hizo solamente para protegerse de un ataque repentino, su caso fué sometido al jurado sin la debida instrucción, o con una instrucción errónea en lo que respecta al deber en que estaba de huir. Hubo un volumen de prueba contradictoria y de ella no podemos llegar a la conclusión de que la cuestión de la necesidad de huir no era importante para la consideración del jurado.

Consideramos que el error es fundamental y por tanto, debe ser revocada la sentencia, debiendo devolverse las actuaciones a la corte inferior para la celebración de un nuevo juicio.

> *Revocada la sentencia apelada y ordenada la celebración de un nuevo juicio.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Aldrey y Hutchison.

El Juez Asociado Sr. del Toro no intervino en la vista de este caso.