EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* PABLO DÍAZ, conocido por LAUREANO, y NANO DÍAZ, acusado y apelante.

No. 2460.—*Visto:* Noviembre 4, 1925. *Resuelto:* Junio 10, 1926.

1. HOMICIDIO.—"INDICTMENT" Y ACUSACIÓN—SU SUFICIENCIA—USO DE LA FRASE "MUERTE ILEGAL."—Como la frase *muerte ilegal* usada en una acusación por asesinato expresa la misma idea que matar ilegalmente o dar muerte ilegal, su uso no hace la acusación insuficiente.

2. HOMICIDIO—APELACIÓN Y ERROR—ERRORES ALEGADOS, NO PERJUDICIALES—ADMISIÓN DE PRUEBA OBJETADA—PRUEBA DE UN HECHO NO NECESARIO EN EL PROCESO.—La admisión de una declaración sobre un hecho no necesario en un proceso por no relacionarse con la comisión del delito por el acusado, y, que en nada le perjudicó no puede sostenerse constituya error perjudicial.

3. DERECHO PENAL—EVIDENCIA—EVIDENCIA EN LA INVESTIGACIÓN PRELIMINAR O EN JUICIO ANTERIOR—SU ADMISIBILIDAD COMO PRUEBA—DECLARACIONES PRESTADAS POR TESTIGOS EN LA INVESTIGACIÓN PRELIMINAR.—Cuando por la oposición de la defensa un testigo nada llega a contestar sobre declaraciones escritas prestadas por él, ni se usan éstas para refrescar la memoria del testigo, el fiscal no está obligado a presentarlas como prueba.

4. HOMICIDIO—EVIDENCIA—DECLARACIONES EN INMINENTE PELIGRO DE MUERTE *(Dying Declarations)*—SU ADMISIBILIDAD EN EVIDENCIA—EN GENERAL.—Manifestaciones hechas en inminente peligro de muerte son admisibles en evidencia en procesos criminales.

5. HOMICIDIO—EVIDENCIA—DECLARACIONES EN INMINENTE PELIGRO DE MUERTE *(Dying Declarations)*—ESTADO DEL PACIENTE ANTE LA VIDA—EN GENERAL.—En este caso se preguntó a un testigo respecto al "estado del paciente ante la vida". Atendida la contestación dada y el hecho de que el testigo (médico) no contestó de manera cierta lo que el herido podía creer respecto a su estado de gravedad, se resolvió la contestación a la pregunta no fué perjudicial.

6. HOMICIDIO—EVIDENCIA—DECLARACIONES EN INMINENTE PELIGRO DE MUERTE *(Dying Declarations)*—SU ADMISIBILIDAD EN EVIDENCIA—DECLARACIÓN POR PERSONA QUE LAS OYE.—Una persona que oye las manifestaciones hechas a otra por un herido en peligro inminente de muerte puede declararlas ante la corte aún cuando fueran dichas a esa otra persona y no a él.

7. DERECHO PENAL—JUICIO—RECEPCIÓN DE EVIDENCIA—EXCLUSIÓN DE LOS TES-
   TIGOS DURANTE EL JUICIO—TESTIGO EN SALA QUE OYE LAS DECLARACIONES
   DE LOS DEMÁS TESTIGOS.—El hecho de que, en causa criminal, un testigo
   haya podido oir la declaración de otro testigo, no es motivo para que no
   se admita su declaración.

8. HOMICIDIO—EVIDENCIA—DECLARACIONES EN INMINENTE PELIGRO DE MUERTE
   *(Dying Declarations)*—ADMISIBILIDAD—MANIFESTACIONES DE UNO QUE CONO-
   CÍA ESTABA PRÓXIMO A MORIR.—La declaración de un testigo sobre mani-
   festaciones que le hiciera un herido que conocía que estaba próximo a morir
   es admisible como hechas éstas en peligro de muerte *(dying declarations)*.

9. HOMICIDIO—APELACIÓN Y ERROR—ERRORES ALEGADOS NO PERJUDICIALES—AD-
   MISIÓN DE PRUEBA OBJETADA—EN GENERAL.—Si bien el estado de próxima
   muerte debe ser conocido por un herido para que sus manifestaciones sean
   admisibles, cuando de la prueba resulta que el herido conocía su situación,
   la declaración de un médico a pregunta que tiende a demostrar que el herido
   estaba gravemente enfermo no es perjudicial.

10. HOMICIDIO—EVIDENCIA—DECLARACIONES EN INMINENTE PELIGRO DE MUERTE
    *(Dying Declarations)*—SU ADMISIBILIDAD EN EVIDENCIA—DECLARACIÓN POR
    PERSONA QUE LAS OYE.—El hecho de que unos testigos no hubieran decla-
    rado sobre el hecho de si un herido conocía su situación de peligro (muerte)
    no es motivo para no declarar lo que oyeron decir al herido, cuando otras
    personas, antes con ellos, declararon respecto a que el herido sabía que
    estaba próxima su muerte.

11. HOMICIDIO—EVIDENCIA—ADMISIBILIDAD EN GENERAL—PRUEBA PARA IDENTIFI-
    CAR EL ACUSADO—ROPA QUE LLEVABA EL ACUSADO AL REALIZAR EL ACTO.—
    El permitir varios testigos declarar sobre la ropa que llevaba puesta el acu-
    sado la noche del suceso, no es error cuando el testigo que persiguió al acu-
    sado inmediatamente después del crimen describió dicha ropa y él y otros
    testigos la reconocieron cuando el acusado fué detenido.

12. DERECHO PENAL—EVIDENCIA—MATERIALIDAD Y COMPETENCIA.—No son inad-
    misibles ni perjudiciales al acusado manifestaciones de un testigo que son
    consecuencia de la apreciación de los sentidos de dicho testigo.

13. DERECHO PENAL—JUICIO—ATRIBUCIONES DE LA CORTE Y DEL JURADO EN GE-
    NERAL—ORDEN RESPECTO A ABSOLUCIÓN PERENTORIA—EN GENERAL.—Termi-
    nada la prueba del fiscal, no cabe absolución perentoria por el fundamento
    de ser aquella insuficiente, cuando dicha prueba es clara, precisa y abun-
    dante sobre la comisión del delito por el acusado.

14. HOMICIDIO—APELACIÓN Y ERROR—REVISIÓN—CUESTIONES RELATIVAS A LAS
    PRUEBAS—APRECIACIÓN DE LAS MISMAS.—En ausencia de error manifiesto
    en la apreciación de la prueba por el jurado, el hecho de que se probara
    en el juicio que el acusado estuvo loco en una fecha remota no le obligaba
    a aceptar opinión pericial tendente a demostrar la irresponsabilidad de dicho
    acusado.

SENTENCIA de *Pablo Berga,* J. (Humacao), condenando al acusado
  por delito de asesinato en segundo grado. *Confirmada.*

*Francisco Cervoni,* abogado del apelante; *José E. Figueras,* abogado
  de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR ALDREY, emitió la opinión del tribunal.

Resulta claramente de la prueba en el juicio de esta causa que el domingo 28 de octubre de 1923 a eso de las dos de la tarde y cerca del pueblo de Las Piedras un automóvil Ford guiado por José Antonio Rodríguez causó un golpe a una persona llamada José Díaz, la que aquél condujo al pueblo de Las Piedras para que fuese curada y no habiendo encontrado al médico resolvió llevarla con tal fin a Humacao: que a pesar de que dicho automóvil estaba ocupado por cinco personas intentó ir en él a Humacao Pablo Díaz, conocido por Laureano Díaz y por Nano Díaz, que no era pariente del lesionado, lo que no le permitió José Antonio Rodríguez diciéndole que se retirase, que era un intruso: que esa tarde, a eso de las cuatro, fué visto Nano Díaz en viaje de Las Piedras a Humacao y entre cinco y seis de la tarde procuró en Humacao de varias personas que le vendieran o le prestaran un revólver, manifestando a algunas de ellas que lo quería por un disgusto que había tenido con José Antonio Rodríguez y quería vengarse, y que habiendo conseguido una pistola, esa noche, de ocho a nueve, en momentos en que José Antonio Rodríguez tomaba gasolina en un garage de Humacao y se dirigía a su automóvil, Nano Díaz le hizo súbitamente por la espalda y sin mediar palabras un disparo de pistola y otro más de frente al volverse Rodríguez, uno de los cuales le interesó el abdomen y le causó la muerte dos horas después.

Por ese hecho fué acusado Nano Díaz de asesinato en primer grado, declarado culpable por un jurado de asesinato en segundo grado y condenado por la corte inferior a la pena de veinticinco años de presidio interpuso este recurso de apelación.

Antes de argumentar el apelante los motivos de error que alega para que revoquemos esa sentencia expone como introducción a ellos que por primera vez plantea la cuestión

de que en la acusación formulada contra él no se expresan los hechos constitutivos de delito de asesinato.

[1] La acusación, en lo necesario ahora, dice que el acusado "ilegal y voluntariamente, con malicia premeditada y propósito deliberado y firme de dar muerte ilegal acometió y agredió con una pistola, que es un arma mortífera, al ser humano José Antonio Rodríguez haciéndole varios disparos y produciéndole con uno de ellos una herida de bala en el abdomen, a consecuencia de la cual falleció dicho José Antonio Rodríguez momentos después." Y alega el apelante que esa acusación es insuficiente porque la muerte que se requiere para que exista delito no es la "muerte ilegal" que expresa la acusación porque tal clase de muerte no existe, sino la muerte causada ilegalmente, y que las demás alegaciones son conclusiones de derecho excepto las referentes al acometimiento y agresión.

Asesinato, según el artículo 199 del Código Penal, es matar ilegalmente a un ser humano con malicia premeditada; y como la frase "muerte ilegal" usada en la acusación expresa la misma idea que matar ilegalmente o dar muerte ilegal, no podemos declarar que la frase usada en la acusación la haga insuficiente. Las demás palabras usadas sobre malicia premeditada y propósito deliberado y firme de dar muerte son palabras del Código Penal y su empleo en una acusación no la hace defectuosa.

De los diez y seis errores alegados por el apelante para sostener su apelación los catorce primeros son por admisión de evidencia de la acusación que considera indebida; otro por no haberse ordenado una absolución perentoria y el último es para sostener la irresponsabilidad del acusado, si realizó el hecho que se le imputa.

I. En este motivo se alega que debió ser eliminada la declaración del doctor César Domínguez presentada por el fiscal.

Esa declaración fué sobre la curación hecha a José Díaz, lesionado por el automóvil, y si bien no era necesaria en

este proceso porque no se relacionaba con la comisión del delito por el acusado en nada le perjudicó, por lo que no podemos sostener que su admisión constituyera un error perjudicial.

II. Se funda este motivo de error en que habiendo el fiscal mostrado al testigo Juan Rivera (*a*) Fajardito dos declaraciones escritas prestadas por él y habiendo solicitado la defensa del apelante que esas declaraciones escritas fueran presentadas al jurado para que pudiera apreciarlas el juez negó esa pretensión diciendo que si la defensa quería presentarlas al jurado podía hacerlo cuando llegase el momento de su prueba.

Ese testigo fué el que vió disparar al acusado y lo persiguió por algún tiempo y como la defensa tratara con sus repreguntas de demostrar que en ocasiones anteriores había declarado de distinta manera, a nuevas preguntas del fiscal contestó que él había declarado la noche del suceso en el cuartel de la policía ante el juez municipal, declaración que días después ratificó ante el fiscal sin ampliarla y que eran iguales sus declaraciones; y habiéndole mostrado el fiscal un documento y manifestado estar firmado por él siendo su declaración en el cuartel de la policía, hecha y firmada ante el fiscal, la defensa se opuso y el fiscal retiró su pregunta, manifestando entonces la defensa que ambas declaraciones deben ser presentadas como prueba para que el jurado pueda apreciarlas en su justo valor.

Como se ve nada llegó a contestar el testigo sobre esas declaraciones escritas por la oposición de la defensa y no se usaron para refrescar la memoria del testigo por lo que el fiscal no estaba obligado a presentarlas como prueba, y como no se hizo pregunta alguna al testigo sobre el contenido de esas declaraciones no se ha infringido el artículo 161 de la Ley de Evidencia y no existe el error alegado.

III. Se dice que fué erróneo "permitir que el fiscal presentara como prueba, a manera de *dying declaration,* cier-

tas manifestaciones atribuídas al interfecto José Antonio
Rodríguez.''

No funda este error el apelante en que no se hubiera
demostrado, como se demostró, que cuando el interfecto
José Antonio Rodríguez hizo las manifestaciones que le
atribuyen los testigos no supiera que estaba en inminente
peligro de próxima muerte sino en que tal clase de prueba
no es admisible, pero la admisibilidad de esa clase de decla-
raciones en procesos criminales ha sido declarada por este
tribunal en el caso de *El Pueblo* v. *Morales, alias Yare Yare,*
14 D.P.R. 246, en el de *El Pueblo* v. *Berríos,* 23 D.P.R. 831,
y en otros; y la razón de tal admisibilidad se encuentra
claramente explicada en Warton's Criminal Evidence, vol.
1, pág. 540.

IV. Se alega este error por haberse permitido que el
Dr. Segarra contestase cierta pregunta del fiscal respecto
a cómo se encontraba José Antonio Rodríguez en cuanto a
lucidez y por no haber sido eliminada toda su declaración.

El Dr. Segarra declaró que la noche del suceso tuvo no-
ticia de que había un herido y lo llevaban al hospital por lo
que fué a él y encontró a José Antonio Rodríguez en la mesa
de operaciones: que el herido tenía un balazo en el pecho
que le interesó el hígado y era mortal por necesidad: que
respiraba mal, estaba sudoroso y anheloso, con el pulso muy
débil, tenía una hemorragia muy intensa y que estaban inte-
resadas la arteria hepática y la vena porta, por lo que la
herida era mortal, y que murió después de ser operado. A
este testigo se le preguntó que en vista del cuadro que des-
cribía del herido dijera cuál era ''el estado del paciente
ante la vida'' a lo que se opuso la defensa ''porque ningún
médico puede responder cuál es el estado del paciente frente
a la vida;'' y el testigo contestó que se puede presumir,
pero no se puede afirmar, que de acuerdo con ese estado de
gravedad el individuo puede creer que se va a morir o que
se va a salvar, pero que no podría afirmar una cosa ni la

otra, pero que para el médico es un estado grave porque el hombre está cerca de la muerte.

Aunque ciertamente se trató con esa pregunta de que el médico dijera lo que el agredido pensaba con respecto a la gravedad de su situación por el estado en que se hallaba, del cual cualquier juez o jurado puede deducir la creencia que tuviera el herido respecto a próxima muerte, sin embargo, la contestación a esa pregunta no fué perjudicial para el apelante pues como hemos visto el médico no contestó de una manera cierta lo que el herido podía creer.

V. Se alega en este motivo que debió ser eliminada la declaración del Dr. López del Valle sobre manifestaciones hechas por el herido José Antonio Rodríguez a otra persona.

El Dr. López del Valle fué uno de los médicos que operaron a José Antonio Rodríguez antes de morir y declaró que cuando el herido volvió de la anestesia producida para ser operado oyó que dijo a un señor que estaba a su lado que él se sentía muy malo, que se moría, a cuyas manifestaciones hizo objeción la defensa y pidió que fueran eliminadas porque la persona a quien las hizo Rodríguez era el que debe declararlas en el juicio.

No existe el error alegado puesto que habiendo oído el Dr. López del Valle las mencionadas palabras de boca del mismo Rodríguez podía declararlas en la corte aunque fueran dichas a otra persona y no a él.

VI. El artículo 233 párrafo 7º del Código de Enjuiciamiento Criminal autoriza al tribunal donde se celebra el juicio para que mientras se está examinando a un testigo excluya a todos los demás que no hayan sido examinados, pero como esa facultad es discrecional y como no hace obligatoria en todos los casos la exclusión de los testigos, el hecho de que el testigo Rafael B. Díaz haya podido oir las declaraciones de otros testigos no es motivo para declarar que la corte inferior no debió permitir su declaración.

VII. También se alega que no debió ser permitida la

declaración de Rafael B. Díaz porque lo que declaró no constituye manifestaciones hechas por Rodríguez conociendo que su muerte estaba próxima (*dying declaration.*)

Ese testigo declaró en el juicio que estando José Antonio Rodríguez herido en la mesa de operaciones y muy afectado le preguntó "¿qué tal?" y Rodríguez le contestó: "Ay bendito, Capitán, me estoy muriendo, Nano Díaz me ha matado" y después con voz entrecortada le dió las señas del acusado: declaración que por sí sola demuestra que Rodríguez conocía que estaba próximo a morir por lo que era admisible, aparte que independientemente y antes se había probado que el herido manifestó a uno de los médicos antes de ser operado "Doctor, trate de salvarme que yo le pagaré;" a otra persona dijo "yo me muero, me siento muy mal" y a un amigo suyo lo siguiente "Cádiz, no me dejes morir."

VIII. Después de declarar el Dr. Segarra sobre las heridas de Rodríguez, el fiscal le preguntó lo siguiente: "Doctor, una persona que tiene el pulso flojo, subanormal y además tiene esas heridas en la región abdominal que le interesa el hígado, el diafragma y el pulmón, y por consecüencia están interesadas la arteria hepática y la vena porta, y usted se encuentra ese individuo en esas condiciones, ¿qué usted dice?"

A esa pregunta se opuso la defensa y se alega ahora que fué error el admitirla porque tenía la tendencia de demostrar que el herido estaba gravemente enfermo, lo que corresponde al jurado y porque no basta que la gravedad sea reconocida por el médico sino que debe ser conocida por el enfermo mismo para que sus manifestaciones puedan ser admitidas como hechas en peligro de muerte.

Si una herida es de tal naturaleza que puede producir la muerte es materia propia para ser declarada por un médico; y si bien es cierto que el estado de próxima muerte debe ser conocido por el herido para que sus manifestaciones sean admisibles, de la prueba en el juicio resulta que

Rodríguez conocía su situación por lo que no puede decirse que la declaración de dicho médico fuera perjudicial para el apelante.

IX. Este motivo de error se alega por no haber sido eliminadas las declaraciones de varios testigos respecto a haber oído a José Antonio Rodríguez que el que lo hirió fué Laureano Díaz.

Después de haber declarado varias personas con respecto a que José Antonio Rodríguez sabía que estaba próxima su muerte fué que declararon dichos testigos sobre lo que le oyeron decir de haber sido Laureano Díaz quien lo hirió, y el hecho de que ellos no declararan antes sobre si el herido conocía su situación no es motivo para que no pudiesen declarar lo que le oyeron.

X y XI. Estos dos motivos son iguales al IX aunque con referencia a testigos no mencionados en él.

La numeración de los errores salta el XII.

XIII. Tampoco éxiste error porque se permitiera que varios testigos declarasen sobre las ropas que tenía puestas el acusado la noche del suceso, pues uno de los testigos, el que persiguió al acusado inmediatamente después del crimen, describió la ropa que entonces él tenía puesta y él y otros testigos la reconocieron cuando el acusado fué detenido poco tiempo después.

XIV. No era tampoco inadmisible ni perjudicial que un testigo declarase que cuando esa noche detuvo al acusado en la carretera de Humacao a las Piedras dijese que el acusado iba a pie, andando ligero, algo cansado y sudoroso, pues todas esas manifestaciones eran consecuencia de la apreciación de los sentidos del testigo.

XV. Se alega este motivo de error porque el acusado no fué absuelto perentoriamente cuando el fiscal terminó la presentación de su prueba por ser ésta insuficiente, que fué el fundamento alegado en la corte inferior para esa solicitud. Sin embargo, la prueba del fiscal fué clara, pre-

cisa y abundante sobre la comisión del delito por el acusado.

XVI. El último motivo del recurso es que el veredicto de culpabilidad es contrario a la prueba.

Para tratar de probar la defensa que el acusado es irresponsable del delito de que se le acusó en octubre de 1923 presentó evidencia tendente a demostrar que estuvo en el manicomio cinco años antes padeciendo de melancolía cíclica de la que mejoró, saliendo al mes del manicomio: que normalmente se halla bien pero cuando tiene algún disgusto padece un rapto de locura, pero después de satisfacer sus deseos de venganza vuelve a su estado lúcido; y prueba de los hechos que produjeron su ingreso en el manicomio.

La apreciación de esa prueba correspondía a los doce hombres que constituyeron el jurado, contra cuya apreciación no podemos ir sin un error manifiesto de su parte, lo que no ocurre en este caso pues el hecho de que se probara que estuvo loco en una fecha algo remota no le obligaba a aceptar necesariamente la opinión del perito de que los disgustos o las contrariedades producen en el acusado raptos de locura y de venganza.

*La sentencia apelada debe ser confirmada.*