Antonio Rojas & Co., Inc., demandante y apelada, v. Pío Luna, demandado y apelante.

No. 4899.—*Sometido:* Junio 25, 1929.—*Resuelto:* Julio 9, 1929.

C. *Domínguez Rubio,* abogado del apelante; M. *Guzmán Texidor,* abogado de la apelada.

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

En 1914 Salvador Ruiz compró 45 cuerdas de terreno, lindantes por el norte con Carlos J. Marrero, por el sur con Genaro Zayas y Tomás Pagán, por el este con la carretera que conduce de Barranquitas a Aibonito y por el oeste con la quebrada Helechal. Posteriormente vendió 4 cuerdas a José Marrero y 2 cuerdas, al oeste, a Sinforoso Luna. Después le vendió 1.25 cuerdas a Ramón Alicea, quien a la postre se las vendió a José Rochet. Silverio Rivera le compró a Rochet las 1.25 cuerdas y después adquirió de Ruiz una faja de 62 centésimas de una cuerda, constituyendo de este modo una parcela de 1.87 cuerdas, colindantes al oeste con la quebrada Helechal y contiguas a las dos cuerdas pertenecientes a Sinforoso Luna. Luego, Pío Luna, quien vivía allende la quebrada en media cuerda de terreno (frente a las 1.87 cuerdas) adquirió estas últimas de uno que se las había comprado a Rivera. La venta a Alicea se efectuó en mayo de 1919, y la de Rivera, un año después.

· En septiembre de 1927 Ruiz le vendió a Antonio Rojas & Co., Inc., el resto de las 45 cuerdas. El predio así transferido se describe en la escritura como uno de 19 cuerdas, colindantes por el norte con tierras de Gerónimo Vallecillo, por el sur con la Sucesión de Carlos J. Marrero, por el este con la carretera de Barranquitas en el sitio en que se cruza con la carretera de Coamo a Aibonito, y por el oeste con la quebrada Helechal.

Al entenderse en la compra de las 19 cuerdas, la corporación estuvo representada por su tesorero Simón Rojas. Ruiz manifestó que sólo vendió lo que restaba de las 45 cuerdas; que antes de otorgarse la escritura recorrió la finca con Simón Rojas, le mostró el terreno poseído por Sinforoso Luna y por Pío Luna, le señaló las colindancias y le dijo que estos traspasos previos debían respetarse. Ruiz también dice que no habló con el notario antes de firmar la escritura y no suministró los datos para la descripción de las 19 cuerdas contenida en la misma. La declaración de Ruiz no fué contradicha, aunque Simón Rojas fué testigo de la demandante en la corte inferior, y el abogado de la demandante fué el notario que redactó la escritura. En realidad de verdad, prácticamente no hay conflicto en ninguna parte de la evidencia aducida durante el juicio.

Salvador Ruiz continuó viviendo en la finca después de la venta efectuada en septiembre de 1927 hasta uno de los días del mes de febrero de 1928. Dice que durante todo ese término, los mayordomos y empleados de Rojas & Co. no se metieron en los terrenos poseídos por Pío Luna ni pusieron en tela de juicio su derecho de posesión. En noviembre de 1928 Rojas & Co. solicitó un *injunction* para impedir que Pío Luna penetrara en los terrenos de la peticionaria, para que se abstuviera de echar animales en dicha finca y de ejercitar actos de dominio en ella. El juez de distrito, después de celebrarse una vista respecto a una orden para mostrar

causas por las cuales no se debía expedir un *injunction* preliminar, decretó, en vez del recurso preliminar solicitado, un *injunction* permanente.

En la transcripción taquigráfica aparecen ciertas manifestaciones sueltas respecto a animales echados en las 1.87 cuerdas y que de allí se habían trasladado a los terrenos de la peticionaria, pero no se señala un caso específico de tal intrusión (*trespass*). Es una circunstancia significativa que cuando la peticionaria decidió enviar una vaca de Pío Luna al depósito municipal de animales realengos, se hizo necesario penetrar en las 1.87 cuerdas donde estaba amarrada la vaca. En otra ocasión Luna empezó a construir una cerca de alambre a lo largo de la colindancia oriental de las 1.87 cuerdas, y para conseguir este fin cortó seis especones de la misma propiedad. A raíz de esto el tesorero de la peticionaria apareció allí con un policía y con el juez de paz, y el policía hizo una nota de los seis tocones de donde se habían cortado las estacas. Pío entonces ofreció remover la cerca si la corporación retiraba la acusación criminal, pero su proposición fué rechazada. Este incidente parece haber ocurrido poco antes del juicio, y el récord no revela el resultado de la persecución criminal. Hemos bosquejado suficientes hechos para indicar que estaba envuelta una cuestión de títulos y que la corporación tenía pleno conocimiento de la venta anterior a Alicea y de la posesión por Luna so color de propiedad al tiempo en que la demandante adquirió el remanente de las 45 cuerdas de Ruiz.

La relación del caso y opinión emitida por el juez sentenciador se explica de por sí, según aparece del siguiente extracto:

"No pretendemos negar y más bien nos inclinamos a creer, por razones que nacen de la misma prueba, que la compra alegada por el demandado es cierta y que Salvador Ruiz ha verificado una doble venta de una misma parcela de terreno; pero es también innegable que para el recurso que se solicita la situación de la demandante es ventajosa ya que está favorecida por los preceptos del artículo

1376 del Código Civil y debe tener toda la protección de los tribunales de justicia para mantener el derecho que adquirió al inscribir el dominio de su finca, de la cual es indudable que se encontraba en posesión material y civil al ocurrir los hechos que dieron lugar a este recurso de injunction. ¿Por qué, pues, desestimar una petición que creemos justa y en ley para dar paso a nuevas acciones y una multiplicidad de procedimientos en los que siempre al fin prevalecería el derecho de la demandante? Se ha demostrado, por tanto, que la demandante fué perturbada en el disfrute de su finca con actos violentos del demandado, quien penetra en ella y le ocasiona perjuicios tales como se alegan en la demanda y procede, a juicio de esta corte, la expedición del injunction solicitado." (pp. 17 y 18 Rel. caso y op.)

Nada hallamos en la prueba que justifique la conclusión de que la peticionaria estuviera en momento alguno en la posesión material de las 1.87 cuerdas objeto de esta controversia. Por el contrario, la prueba testifical de la peticionaria tiende a demostrar en conjunto que los actos del demandado la impidieron continuamente ejercer la posesión efectiva o el dominio de ese terreno. La prueba testifical del demandante también demuestra que amarraba su vaca y tal vez una novilla y una yegua en aquella parte de las 1.87 cuerdas que pudiera destinarse a fines de pastoreo, mientras que mantenía bajo cultivo el resto. Esta es quizás la razón obvia, si no la única lógica, de por qué la peticionaria no acudió al remedio sumario de *injunction* provisto por el estatuto para impedir cualquier perturbación de la posesión material.

El artículo 1376 del Código Civil se discute en el caso de *Abella* v. *Antuñano*, 14 D.P.R. 498, resuelto más de 20 años ba, en que el 1°., 2°., 4°., 5°. y 6°. párrafos del sílabo leen como sigue:

"En caso de doble venta de cosa inmueble la propiedad pertenece al adquirente que antes la haya inscrito en el Registro. Aunque el artículo 1376 del Código Civil Revisado no exige de un modo expreso el requisito de la buena fe en el adquirente en casos de bienes inmuebles, es necesaria la buena fe en la adquisición para los efectos legales de la inscripción.

"Aunque el artículo 1376 del Código Civil Revisado no expresa la necesidad de la preexistencia del derecho en el transmitente debe entenderse que esa circunstancia es uno de los supuestos de que el artículo parte.

"Los preceptos de los artículos 36 y 38 de la Ley Hipotecaria tienen aplicación a los casos de doble venta, siempre que se trate de la adquisición de cosa inmueble de buena fe, e inscrita en el registro, lo que no pasa en el caso de autos.

"El que adquiere de mala fe una finca que ha sido vendida dos veces, no puede invocar el carácter de tercero para amparar su derecho con la inscripción hecha en el registro de la propiedad.

"El que vende una finca a uno y luego vende esa misma finca a otro, sabiendo este segundo adquirente que ya había sido vendida anteriormente aunque sin escritura, esta segunda venta es nula, porque nadie puede transmitir la propiedad de una cosa de que ya se ha desprendido, y este vicio de nulidad no desaparece por la inscripción hecha en el registro, según el artículo 35 de la Ley Hipotecaria."

Véase además el caso de *Miranda* v. *Municipio de Aguadilla, ante,* pág. 467.

El procedimiento de *injunction* no está adaptado a la determinación ·de alegaciones contradictorias respecto al título de propiedad inmueble, y ordinariamente no se concederá un *injunction* cuando el derecho de un peticionario es dudoso, hasta tanto se establezca mediante una acción en ley. En verdad, no puede invocarse con éxito el remedio por un peticionario con el fin de desalojar un alegado dueño de propiedad inmueble que la ha poseído bajo un título *prima facie* superior al de tal peticionario, empujando así al demandado en el procedimiento de *injunction* a la posición más difícil y arriesgada de demandante en una acción reivindicatoria.

*Debe revocarse la sentencia apelada, y condenarse en costas a la demandante.*

### EN MOCIÓN DE RECONSIDERACIÓN

El abogado de la apelada solicita que enmendemos la sentencia dictada en apelación, en el sentido de ordenar la

continuación del procedimiento hasta su conclusión final en la corte inferior.

La moción expone que la peticionaria sólo presentó parte de su evidencia durante la vista de la orden para mostrar causa y que mantuvo en reserva la mayor parte de esa evidencia con el fin de presentarla en la vista posterior respecto a la cuestión de convertir en permanente un *injunction* preliminar.

La orden para mostrar causa, que iba acompañada de una orden de interdicto prohibitorio (*temporary restraining order*), no se limitaba por sus propios términos a la cuestión de si debía o no librarse un auto preliminar posterior. En respuesta a esta orden el demandado radicó su contestación a la petición. El decreto de la corte inferior convirtió la orden de interdicto prohibitorio en un *injunction* permanente. El alegato de la apelada en apoyo de ese decreto empieza haciendo referencia en primer lugar a la petición de *injunction*, en segundo, a la contestación radicada por el demandado, y en tercero, al decreto final dictado por la corte de distrito. No contiene intimación alguna de que el resultado en la corte inferior se excedió de lo que la peticionaria esperaba. La apelada estuvo muy conforme, tanto en la corte inferior como en este tribunal, en permitir que la resolución de la corte de distrito subsistiera como una determinación final de toda la controversia.

Simón Rojas, tesorero de la corporación demandante, y Eduardo Rosario, mayordomo de la peticionaria, estuvieron presentes en el acto del juicio y declararon como testigos de la demandante. La prueba testifical del demandado en torno a su posesión material de los terrenos en controversia y a la compra hecha por la peticionaria con pleno conocimiento de una venta anterior al demandado, señala a Simón Rojas y a Eduardo Rosario como los testigos necesarios para una refutación. Sin embargo, ninguno de estos testigos volvió a ocupar la silla testifical.

La moción no indica la naturaleza de la evidencia que la

peticionaria se reservó. No podemos asumir que hubiera eliminado la cuestión de título. Por consiguiente, el demandado no debe ser sometido a los gastos y molestias que le acarrearían ulteriores procedimientos en esta causa.

Esta corte tuvo el propósito, según lo indica la concesión de las costas, de desestimar la acción. Sin embargo, la sentencia siguió la letra más bien que el espíritu del último párrafo de la opinión.

*En vez de la enmienda sugerida por la apelada, debe modificarse la sentencia de este tribunal en el sentido de incluir una desestimación formal del litigio.*