EDUARDO RIVERA COLÓN, demandante y apelado, *v.* JORGE COLÓN MELÉNDEZ, demandado y apelante.

Núm. 8629.—*Sometido:* Abril 7, 1943. *Resuelto:* Mayo 18, 1943.

*Ramón G. Goyco,* abogado del apelante; *E. Tristani, Jr.,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Los herederos de José Ramón Meléndez y de Rosalía Rivera eran dueños de una finca de 570 cuerdas radicada en el barrio Caonillas Arriba, del término municipal de Villalba. De ella segregaron y vendieron a Eduardo Rivera Colón una porción de 200 cuerdas, por escritura de 27 de febrero de 1937 ante el notario Edelmiro Huertas Zayas. Por virtud de esa segregación la finca quedó reducida a 370 cuerdas. No habiendo sido satisfecha la contribución de herencia de la causante Rosalía Rivera, el Colector de Rentas Internas de Villalba, conforme aparece del acta de subasta presentada en evidencia, fechada el 4 de abril de 1940, embargó y vendió bienes de dicha sucesión que describe así:

"Finca rústica situada en el Bo. Caonillas Arriba del municipio de Villalba, P. R., con cabida de condominio en mitad de finca de 570 cdas. y casa."

A continuación expone las colindancias y más adelante en la misma acta expone:

"Durante el acto de la subasta fueron hechas las siguientes ofertas:

" * * * * * * *

"(a) Don Eduardo Rivera Colón, . . . ofreció por el condominio en mitad de finca la suma de $185.94.

" * * * * * * *

" . . . y siendo la oferta hecha por don Eduardo Rivera Colón, de las circunstancias personales ya expresadas, la más alta y única y habiendo depositado dicho Sr. $185.94 que importa el total de su oferta, a éste se adjudican los bienes por los que hizo postura, a reserva de que los interesados ejerciten el derecho de redención en consonancia con la ley."

El 9 de marzo de 1940 se le extendió "certificado de compra de bienes inmuebles" y en dicho certificado vuelve a describirse la propiedad vendida como "un condominio sobre la finca de 570 cuerdas y casa, en el barrio Villalba Arriba, lindando por el Norte con Juan Cintrón Velazco; Sur, Río

Toavacas; Este, Andrés Hernández, Jacinto Santiago y Manuel Maldonado; y por el Oeste con el río Toavacas."

Vamos a asumir, a los efectos de la discusión, que lo que realmente vendió el Colector y compró Eduardo Rivera Colón no fué ese condominio indeterminado a que se refieren el acta de la subasta y el "certificado de compra de bienes inmuebles", sino el resto de la finca que por haberse segregado de ella 200 cuerdas, había quedado reducida a 370 cuerdas; y vamos a asumir también que de estas 370 cuerdas vendió Eduardo Rivera Colón la parcela de 185 cuerdas a Juan Colón, quien a su vez las vendió a Tinio Colón, y que con tal motivo la finca de Eduardo Rivera Colón tiene una superficie de 385 cuerdas, o sea 200 cuerdas que compró en el año 1937 y las 185 objeto de la subasta.

Los herederos dejaron transcurrir el año desde que se efectuó la subasta sin redimir la propiedad.

En 25 de abril de 1941 Eduardo Rivera Colón enfermó de parálisis infantil, saliendo de Puerto Rico el 7 de agosto del mismo año e ingresando en el Sanatorio de Warm Springs, Georgia, el primero de septiembre de 1941, de donde regresó a Puerto Rico siete u ocho meses después. Un año después de la venta, Eduardo Rivera Colón echó en la finca cierto ganado vacuno, caballar y cabrío; pero ello no obstante, por lo menos una de las anteriores dueñas, Rita Meléndez, que hacía diez años vivía en la finca, continuó allí ocupándola, y en 24 de febrero de 1942 arrendó a su hijo, el demandado Jorge Colón Meléndez, una parcela de 25 cuerdas radicada en la porción de 185 cuerdas que había retenido Eduardo Rivera Colón. En junio de 1942 Eduardo Rivera Colón fué personalmente a la finca, encontrando que Jorge Colón Meléndez estaba preparando terreno y sembrando en la referida porción de 25 cuerdas, y al negarse este último a abandonar la finca, radicó Rivera Colón en la corte inferior la petición de *injunction* origen de la sentencia apelada.

Parece absurdo que no habiéndose previamente practicado la división de la comunidad que existía entre los herederos

de José Ramón Meléndez y Rosalía Rivera, pudiera la heredera Rita Meléndez arrendar una porción determinada de dicha finca. El arrendamiento fué posible debido a que según se infiere de la evidencia, si bien no se había practicado una división de la propiedad, los herederos privadamente se habían asignado porciones específicas, por lo menos entre los que vivían la finca, y las 25 cuerdas arrendadas al demandado estaban comprendidas en la porción determinada que estaba poseyendo la heredera Rita Meléndez.

El juez de la corte inferior decretó el injunction, basándose principalmente en que el demandante, a virtud del "certificado de compra" otorgádole por el Colector de Rentas Internas de Villalba, había adquirido la finca en cuestión y que, siendo ello así, Rita Meléndez ningún derecho tenía sobre dicha finca que pudiera transmitir a su hijo el demandado.

Asumiendo, a los efectos del argumento, la validez del "certificado de compra de bienes inmuebles", tendríamos que resolver que la acción de injunction interpuesta en este caso no procede por la sencilla razón de que el injunction es un recurso en equidad, a la que no puede acudirse cuando exista un remedio tan rápido, adecuado y eficaz en ley. Bajo las circunstancias que hemos asumido, ese remedio lo tendría el apelado interponiendo un pleito de desahucio. *José María Colón Meléndez* v. *Providencio Rivera,* resuelto el 10 de marzo último (61 D.P.R. 560). Pero si considerásemos que el título del demandante es, si no nulo, por lo menos dudoso, debido a la forma en que se extendieron el acta de subasta y el certificado de venta, tampoco procedería el injunction porque, como se dijo en *Martínez et al.* v. *Soto,* 32 D.P.R. 607, 610 citando de *Ruling Case Law:*

"'Y es una regla general que no se concederá un *injunction* cuando existe disputa en cuanto al derecho legal envuelto y el derecho del demandante es dudoso, siendo la teoría que es el deber de la corte proteger los derechos reconocidos más bien que establecer otros nuevos y dudosos. Por tanto, cuando el derecho del demandante

no ha sido establecido de acuerdo con la ley, o no es claro, sino que es dudoso sobre cualquier base en que se coloque, no sólo por la contestación del demandado, sino por la prueba en el pleito, no tiene dicho demandante derecho a un remedio mediante *injunction*. . . . De aquí se infiere que una corte de equidad no intervendrá para impedir un cambio de una servidumbre (*easement*) a menos que el derecho del demandante haya sido establecido de acuerdo con la ley.' 14 R.C.L. 355–356.''

Véanse además *A. Rojas & Co.* v. *Luna,* 39 D.P.R. 838, 842; *Municipio de Comerío* v. *Rivera,* 34 D.P.R. 410; y *Muñoz* v. *Viejo,* 35 D.P.R. 864, 870.

*Sea válido o no el certificado de compra, procede, por los fundamentos anteriormente expuestos, declarar con lugar el recurso, revocar la sentencia apelada y en su lugar dictar otra desestimando la petición de injunction, con costas al demandante.*