Ex Parte Francisco Mercado, peticionario y apelante.

Núm. 8901.—*Sometido:* Mayo 17, 1944. *Resuelto:* Julio 8, 1944.

*José C. Jusino*, abogado del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar*, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El apelante fué recluído en la cárcel municipal de Bayamón a virtud de un auto de prisión librado por el fiscal de distrito para responder del cargo de infracción al artículo 471 del Código Penal. En la misma fecha de su detención el apelante radicó en la corte inferior una petición de hábeas corpus fundada en los siguientes motivos: (*a*) que él no había infringido ningún estatuto penal; (*b*) que no se había presentado contra él ninguna denuncia o acusación a virtud de la cual pudiese ser privado de su libertad; y (*c*) falta de causa probable para su detención.

Después de celebrada la vista y recibida la evidencia que adujo el fiscal, la corte inferior estimó que existió causa probable para la detención y anuló el auto, permaneciendo el apelante en libertad bajo fianza.

Los fundamentos (*a*) y (*b*) alegados en la petición de hábeas corpus carecen de méritos: el primero porque el recurso de hábeas corpus no procede para determinar la culpabilidad o inocencia del detenido; y el segundo, porque para que el fiscal pudiese ordenar el arresto del apelante no era necesario que previamente hubiese radicado una acusación

contra él, siempre que la radicase en el término de sesenta días desde la detención. Artículo 448, Código de Enjuiciamiento Criminal.

 Así, pues, nos limitaremos a determinar si existió o no evidencia demostrativa de causa probable para la detención. A esos efectos, la evidencia presentada por el fiscal debe ser considerada como cierta.

El precepto legal cuya infracción se imputa al acusado es el artículo 471 del Código Penal, que prescribe:([1])

"Toda persona que habiendo vendido, permutado o enajenado cualquier propiedad, mueble o inmueble, *o interés en ella,* o que después de haber otorgado alguna obligación o convenio para la venta de dicha propiedad, voluntariamente y con la intención de defraudar a anteriores o subsiguientes compradores volviera a vender, permutar o enajenar la misma propiedad o cualquier parte de ella, *o interés en la misma,* o que voluntariamente y con la intención de defraudar a anteriores o subsiguientes compradores otorgase a favor de otra persona cualquiera obligación o convenio para vender, permutar o enajenar la misma propiedad o cualquier parte de ella, *o interés en la misma,* a título oneroso, incurrirá en pena de presidio por un término de uno a diez años." (Bastardillas nuestras.)

La evidencia que presentó el fiscal para demostrar la existencia de causa probable puede sintetizarse así: Los hermanos Francisco e Irma Schettini Schroder eran dueños de una finca urbana radicada en Martín Peña, término municipal de Río Piedras, la cual debía por concepto de contribuciones la cantidad de $114.77. El Colector de Rentas Internas de Río Piedras siguió procedimiento de apremio contra la referida propiedad, adjudicándose ésta por la cantidad adeudada al único postor, el apelante, a cuyo nombre se expidió el correspondiente certificado de venta el 4 de diciembre de 1940 (*exhibit* 3 del fiscal).

Antes de que expirase el año que el artículo 348 del Código Político fija para ejercitar el derecho de redención, Francisco

---

([1]) Apareciendo que la edición española no es una correcta traducción de la inglesa, hemos prescindido de ella, siendo nuestra la traducción que aparece en el texto de esta opinión.

Schettini Schroder, en su nombre y en el de su citada hermana, encomendó al abogado Marcilio Carrasquillo la redención de la finca, y a ese efecto le entregó la cantidad de doscientos dólares. Después de repetidas gestiones el abogado Carrasquillo logró encontrarse con el apelante y convino con él la redención de la propiedad. El propio apelante computó la cantidad que se le adeudaba y recibió del abogado Carrasquillo la suma de $174.55 por dicho concepto. Al requerirlo Carrasquillo para que endosara el certificado de venta, manifestó que no lo tenía allí, que más tarde se lo entregaría, extendiendo y entregándole un recibo por la citada cantidad (*exhibit* 2 del fiscal), el cual literalmente dice:

"Recibí del Ledo. Carrasquillo la suma de $174.55 por cuenta de Irma y Francisco Schettini para redención casa Parada 27, Santurce.
"Junio 25, 1941. (Firmado) Francisco Mercado."

No hay controversia alguna en cuanto a que la casa a que se refiere el recibo arriba transcrito es la misma que adquirió el apelante a virtud del certificado de venta.

Declaró el abogado Carrasquillo acerca de los distintos requerimientos que hiciera al apelante para que le entregase el certificado de venta, y de los pretextos y evasivas de este último para eludir su entrega. Declaró además que habiéndose encontrado posteriormente con el apelante en la Corte de Distrito de Bayamón, le exigió el certificado, el cual le fué entregado, pero que al requerirle que extendiese el endoso correspondiente, el apelante rehusó hacerlo so pretexto de que se estaba celebrando en la corte en aquellos momentos un juicio que exigía su presencia en la sala de sesiones, pero ofreció hacer el endoso a la mayor brevedad; que Carrasquillo dejó el certificado de venta y el recibo firmado por Mercado en poder del abogado José R. Fournier, de Bayamón, con encargo de que obtuviese el endoso; que pasó algún tiempo sin tener noticias de las gestiones encomendadas a Fournier, hasta que se enteró de que el apelante, después de haber expirado el término para la redención, por escritura

de 5 de octubre de 1942 ante el notario José C. Jusino (*exhibit* 4 del fiscal) había vendido la finca por la cantidad de mil quinientos dólares a Sixto Pesante, mayor de edad, casado con Quintina Cardona, cirujano menor y vecino de Río Piedras. Fué entonces que dió cuenta al fiscal.

Arguye el apelante que el artículo 471 de nuestro Código Penal no contempla una transacción como la descrita en el presente caso; que ese precepto legal lo que prohibe es que una propiedad o parte de ella que haya sido previamente vendida, permutada o enajenada, sea otra vez vendida, permutada o enajenada a otra persona con el propósito de defraudar al primero o al posterior comprador; y que la redención de una propiedad adquirida en subasta pública para el cobro de contribuciones no es tal venta, permuta o enajenación, porque según alega, al redimirse esa propiedad se presume que el título siempre ha permanecido en la persona a quien pertenecía al verificarse la venta para el cobro de contribuciones. En apoyo de su tesis, invoca el apelante algunos casos de California interpretativos del artículo 533 del Código Penal de aquel Estado, el cual, alega el apelante, es igual al 471 del nuestro. Los referidos casos no son de aplicación, porque si se comparan los dos artículos, inmediatamente se advertirá que el 471 tiene un ámbito mayor que el 533. El 471 no sólo incluye la venta, permuta o enajenación de cualquier propiedad mueble o inmueble, si que también la de cualquier interés en ella, interés que no está incluído en el artículo 533 del Código Penal de California. Es innegable que el comprador de bienes vendidos para el cobro de contribuciones, antes de expirar el año de redención sin que ésta se hubiere verificado, tiene por lo menos un interés en dichos bienes. *Colón* v. *Rivera,* 61 D.P.R. 560, y *Rivera* v. *Colón,* 62 D.P.R. 51, 54. Si antes de haber expirado el año de redención el apelante recibió el importe de ésta, obligándose a endosar el certificado de venta, y mediante evasivas y pretextos logró que expirase el año desde que se había extendido el certificado sin haberlo endosado, vendiendo luego a otra persona

la misma propiedad, en la cual ya él no tenía interés alguno por haberlo enajenado a favor de Francisco e Irma Schettini Schroder([2])—aceptando, repetimos, como cierta esa evidencia a los efectos de determinar la causa probable—, tenemos que concluir que el apelante defraudó a los anteriores dueños de la finca y que el caso está comprendido dentro de las disposiciones del artículo 471 del Código Penal.

■ El abogado del apelante pone gran énfasis en la regla de interpretación al efecto de que los estatutos penales deben ser interpretados estrictamente a favor del acusado. A este efecto, conviene repetir aquí lo dicho por la Corte Suprema de los Estados Unidos en el caso de *United States* v. *Giles,* 300 U.S. 41, 48:

"La regla frecuentemente invocada al efecto de que los estatutos penales deben ser estrictamente interpretados, no requiere que a las palabras de la ley se les dé el significado más restringido o que la evidente intención del legislador sea menospreciada (*disregarded*). *United States* v. *Corbett,* 215 U. S. 233, 242."

■ El caso de *Balasquide* v. *Luján,* 45 D.P.R. 563, invocado por el apelante para sostener que no es admisible en evidencia el recibo por él firmado en el cual acreditó haber recibido de Carrasquillo, por cuenta de Francisco e Irma Schettini, el precio de la redención, no es aplicable al de autos. En aquel caso se trataba de un procedimiento de *mandamus* instituído contra el secretario-auditor y el alcalde-tesorero del Municipio de Cataño para que expidiesen los libramientos y certificaciones de pagos de salarios devengados por el anterior secretario-auditor, los cuales salarios habían sido traspasados al demandante. El documento donde se acreditaba el traspaso era un documento privado, y este tribunal sostuvo, citando con aprobación el caso de *Valladares* v. *Berríos, Auditor,* 38 D.P.R. 682, que sólo podían reconocerse los traspasos por los auditores municipales cuando constasen en documen-

([2])"El contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio." Artículo 1206, Código Civil.

tos auténticos, y no siendo un documento auténtico el presentado por el demandante en aquel caso para acreditar el traspaso, no era admisible en evidencia.

Opinamos que en el presente caso la prueba del fiscal demuestra la existencia de causa probable para la detención del apelante. No erró, por tanto, la corte sentenciadora al denegar el auto de hábeas corpus.

*Procede confirmar la resolución apelada.*