EL PUEBLO DE PUERTO RICO, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE BAYAMÓN, HON. RAFAEL L. YDRACH YORDÁN, JUEZ, recurrido; MARÍA FIGUEROA, interventora.

Número 2457.

*Sometido:* 11 de mayo de 1959. *Resuelto:* 8 de julio de 1959.

*Hon. Secretario de Justicia Hiram R. Cancio (J. B. Fernández Badillo, ex-Secretario de Justicia,* en la petición y su memorándum), *Arturo Estrella, Secretario Auxiliar de Justicia* y *William Fred Santiago, Fiscal Interino, Tribunal Supremo,* abogados del peticionario; *Santos P. Amadeo,* abogado del

---

recurrido; *Luis A. Archilla Laugier,* abogado de la interventora.

EL JUEZ ASOCIADO SEÑOR SERRANO GEYLS emitió la opinión del Tribunal.

El día 27 de junio de 1958 se expidieron por autoridad judicial dos órdenes de arresto contra la Sra. María Figueroa por dos infracciones a la Ley de Bebidas (13 L.P.R.A. secs. 1574 y 1754). Tales órdenes se fundaron en dos declaraciones juradas suscritas por el Sr. Leandro López Torres, agente de rentas internas, quien en ellas afirmaba que en los días 30 de abril y 16 de mayo, ambos del año 1958, había comprado ron "caña" a María Figueroa sin que los envases tuviesen adheridos los correspondientes sellos de rentas internas y había depositado tales envases en la oficina de los agentes de rentas internas. El 23 de agosto de 1958 el Fiscal de Distrito acusó a la Sra. Figueroa por dos infracciones a la Ley de Bebidas. Al comenzar el juicio el 25 de septiembre del mismo año, la acusada pidió el archivo y sobreseimiento de las causas fundándose en que de acuerdo con el art. 448(1) del Código de Enjuiciamiento Criminal (34 L.P.R.A. sec. 1631) la acusación debió haberse sometido dentro de los sesenta días a contar desde las fechas en que el agente de rentas internas observó que la acusada tenía en su poder la bebida clandestina, por estar ella desde ese momento sujeta a arresto (34 L.P.R.A. sec. 243). Sostuvo la acusada que la frase "detenido para responder" (held to answer) del citado art. 448(1) necesariamente tenía que referirse a una situación en que una persona comete un delito en presencia de un agente de orden público autorizado para realizar arrestos. (Art. 116 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 243.)

Luego de una breve discusión en sala, el juez de instancia, allí mismo y sin solicitar ni recibir informes escritos, ordenó el archivo y sobreseimiento de las dos acusaciones, expresándose, en lo pertinente, de la siguiente manera:

"El término de sesenta días fijado por el artículo 448 del Código de Enjuiciamiento Criminal es improrrogable y empieza a computarse desde el momento en que una persona está sujeta a proceso, debiéndose entender el término como está en inglés 'held to answer', que es más correcto que en español.

"El caso de *Carmen Centrale* hace una distinción entre el arresto y 'held to answer' porque en ese caso físicamente Carmen Central no podía ser arrestada, para establecer una norma que gobierne a todas las situaciones por igual.

"Entiende el Tribunal que cuando un agente de orden público presencia la comisión de un delito y como tal agente ocupa objetos delictivos como en este caso y este agente no arresta a la persona, y luego tal agente obtiene su arresto y luego viene la denuncia, desde el momento en que obtiene u ocupa los objetos, desde el momento mismo en que ha visto cometer el delito y de tener ante sí todos los elementos del delito, desde ese instante, el ciudadano está sujeto a proceso, a 'held to answer'. Distinto sería en otros delitos en que los eslabones de la prueba, los elementos constitutivos del delito, están regados, y la prueba de los mismos hay que buscarla en otros sitios y en distintas fechas. Entonces varía la situación.

*     *     *     *     *     *     *

"El Tribunal entiende que en estos casos desde el momento en que el agente de orden público presenció la comisión del delito, y después que el agente de orden público se incautó de los objetos, muy bien pudo en seguida haber sido arrestado el ciudadano, la persona que desde ese momento estaba sujeta a un proceso y llevarla ante la autoridad para que la procesara por esos hechos, o bien radicarse la acusación dentro de los sesenta días a partir de la fecha en que tal persona estaba sujeta a proceso, para hacer efectivo su derecho a un juicio rápido."

A solicitud del Secretario de Justicia expedimos mandamiento de certiorari para revisar la descrita resolución [1] y el caso quedó finalmente sometido a este Tribunal el 11 de mayo de 1959.

_____

[1] Como era de esperarse dicha resolución tuvo efectos muy generalizados. Hemos expedido hasta el presente 48 mandamientos para revisar otras tantas resoluciones provenientes de la misma sala del Tribunal Superior. Informes de prensa revelan que hay cientos de casos en los tribunales de primera instancia en los cuales los acusados han hecho un planteamiento idéntico.

■■ No tenemos duda alguna de que el juez de instancia cometió un grave error. Su resolución es contraria a la letra, la historia y la lógica del precepto y al criterio invariable de este Tribunal expresado en más de treinta sentencias durante más de medio siglo. Es igualmente incorrecta su aplicación de nuestro fallo en *Pueblo* v. *Carmen Centrale*, 46 D.P.R. 494 (1934).

Dispone el art. 448: "A menos que exista justa causa contraria, el tribunal decretará el sobreseimiento del proceso en los casos siguientes:

"1. Cuando una persona haya sido detenida para responder por la comisión de un delito público, siempre que no se haya presentado acusación contra ella en el término de sesenta días desde su detención.

"2. Cuando un acusado, cuyo juicio no haya sido transferido a petición suya, no sea sometido a juicio en el término de ciento veinte días, a contar desde la presentación de la acusación."

Este artículo encuentra su precedente inmediato en el art. 1382 del Código Penal de California, 50 West's *Annotated California Code* 779; 4 Kerr's *Cyclopedic Codes of California* 1273. Acudimos, por consiguiente, y como ya hemos hecho en el pasado, a la versión en inglés para lograr una más clara idea de su contenido. Dice el inciso primero pertinente a este caso: "Where a person has been held to answer for a public offense, if an information is not filed against him within sixty days thereafter." El término pues, comienza a contar desde que la persona está "held to answer for a public offense."

Un análisis de la letra del artículo arroja luz sobre el significado de la frase "held to answer" y permite fijar los dos polos entre los cuales ha de transcurrir el término de sesenta días. El punto final es la fecha de presentación de la acusación—*Pueblo* v. *Petrovich*, 36 D.P.R. 609, 610 (1927)—y el otro, obviamente, tiene que referirse a un acto anterior a ese hecho. Sabemos también que necesariamente tiene que existir la actuación de un tercero (agente oficial)

con relación a la persona: es otro el que causa que "a person *has been held to answer*". Además, es obvio que la persona tiene que tener conocimiento de la acción de ese tercero que la coloca en la posición de estar "held to answer". Nadie podría *responder* si está totalmente ignorante del acto que lo obliga a *responder*. Finalmente, ese acto del tercero tiene que ser uno que coloque a la persona en posición de tener que "responder *por la comisión de un delito público*"; cualquier otro acto que no tenga ese alcance no se ajustaría a la letra del inciso. En resumen, esta operación exegética demuestra que el punto de partida para computar los sesenta días tiene que ser el acto de un tercero, anterior a la presentación de la acusación, conocido por la persona afectada y que tenga el efecto legal de obligar a esa persona a responder por la comisión de un delito público.

La historia de estas disposiciones comprueba la corrección del análisis anteriormente expuesto. Nuestro art. 448, como ya indicamos, se tomó del art. 1382 del Código Penal de California, tal y como éste existía a principios de siglo. ¿Qué significaba la frase "held to answer" en ese art. 1382? La respuesta a esta pregunta requiere que hagamos una incursión, aunque muy breve y cubriendo sólo lo esencial, en el procedimiento criminal de California. [2]

Arrestada una persona se le llevaba ante un magistrado quien tenía la obligación de informarle de la querella en su contra y de su derecho a proveerse de asistencia legal. Luego de un período de tiempo razonable, y de cumplirse con otros requisitos que no es necesario mencionar ahora, se celebraba una vista preliminar en la cual se examinaban los testigos de ambas partes. Después de conocer la prueba, el magistrado ordenaba que la persona fuera puesta en libertad si era de opinión que no se había cometido un delito público o que no había causa suficiente para creer que la persona arrestada fuera culpable. Si luego del examen resultaba lo

---

[2] Véanse especialmente los arts. 858–883 en 4 Kerr's, *op. cit.*, págs. 745–772 y 49 West's, *op. cit.*, págs. 154–200.

460

contrario, el magistrado firmaba una orden en los siguientes términos: "siendo de opinión que se ha cometido el delito especificado en la querella y que hay causa suficiente para creer que la persona AB es culpable, ordeno que se le detenga para responder por dicho delito." ("I order that he be held to answer for the same".) Art. 872. Si el delito era uno para el cual no se permitía fianza, el magistrado ordenaba la encarcelación (commitment) de la persona. Si existía el derecho a fianza, fijaba su monto y ordenaba se encarcelara la persona hasta tanto la fianza fuera satisfecha. Más adelante procedía la presentación de la acusación por el fiscal (information) o por el gran jurado (indictment) y finalmente el juicio.

En ese sistema la frase "held to answer" del art. 1382 tenía (y tiene) (³) un significado preciso. Se refería exclusivamente a la actuación del magistrado de determinar causa contra la persona querellada y de ordenar por ese motivo su encarcelación, con o sin derecho a prestar fianza. (⁴) No había, pues, en California dificultad alguna en computar el término de treinta días dentro del cual se debía presentar la acusación contra la persona "detenida", de acuerdo con lo dispuesto por el art. 1382. (⁵) Incumplido ese término, sin

(³) Aunque ese artículo ha sido modificado en varios extremos—entre ellos el de reducir el término de 30 a 15 días—la frase "held to answer" mantiene su significado original. La historia de esa disposición se encuentra en 50 West's *op. cit.*, pág. 779. En 1931 se le añadió un tercer párrafo al art. 1382 que exige, en los casos de delitos menos graves ante las cortes inferiores, que el juicio se celebre dentro de los 30 días siguientes al arresto. *Herrick* v. *Municipal Court*, 312 P.2d 264 (1957). En general véase Fricke, *California Criminal Procedure* (1952) págs. 65–82, 201–206.

(⁴) En *People* v. *Wallace*, 29 Pac. 950 (1892) confirmado en *People* v. *Thomas*, 203 P.2d 567, 568 (1949), el Tribunal Supremo de California resolvió que una orden "holding a defendant to answer" tiene que ser por escrito y queda perfeccionada cuando se registra la misma en el registro (docket) del juez que la firma. El Código Penal de California exige a cada juez llevar un registro en el cual deben inscribirse todas las causas en las cuales el juez participe y los procedimientos efectuados en cada una de ellas.

(⁵) En los casos en que no se prestaba fianza, el fiscal tenía que presentar la acusación dentro de un término de treinta días. Art. 809. Ese término es actualmente de quince días. 49 West's, *op. cit.*, sec. 739.

causa justificada, procedía el sobreseimiento de la acusación. En casos de delitos menos graves tal sobreseimiento impedía la formación de otra causa por el mismo delito, pero no así en casos de delitos graves.    (Art. 1387.)

En 1902 adoptamos, prácticamente a la letra, el procedimiento criminal de California.    Hubo, no obstante, algunas omisiones de importancia, entre las que cuenta especialmente la eliminación de la vista preliminar ante un magistrado.    Se instituyen en esa época dos maneras de proceder: mediante la primera (arts. 36–46 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. secs. 66–77) se lleva la persona arrestada ante un juez de paz o municipal, el cual "después de practicar una averiguación para cerciorarse si el delito ha sido o no cometido, y convencido que sea de que el delito se ha perpetrado y de que existen causas probables para suponer que el acusado sea el autor, ordenará la detención de éste o admitirá que preste fianza, según la naturaleza del caso, para que comparezca ante la corte de distrito a responder del cargo que se le imputa.    ['for his appearance before the district court to answer said charge.']    Si no existieren pruebas de que el delito haya sido cometido, o causas probables que demuestren la relación que el acusado tenga con su perpetración, éste será puesto en libertad."    Art. 45.    En caso de no prestarse fianza, al juez se le exige firmar un auto de prisión especificando que "Habiéndose con esta fecha dictado una orden para que . . . sea detenido con objeto de que responda al cargo que se le hace de ['be held to answer upon a charge of'] . . . por el presente se ordena a V. lo reciba bajo su custodia y lo detenga en tanto sea legalmente excarcelado."    Art. 38.    El siguiente artículo, que faculta al juez a exigir obligaciones escritas de los testigos de que comparecerán a declarar ante el tribunal correspondiente, comienza diciendo: "Al detener al acusado con objeto de que responda al cargo que se le imputa, el juez . . ."    ("On holding the defendant to answer, the justice of the peace . . .".)    Y el art. 43 añade: "Cuando un juez de paz haya decretado la libertad del acusado, o le haya hecho

detener para que responda al cargo que se le hace ['When a justice of the peace has discharged a defendant or has held him to answer . . .'] deberá devolver al secretario del tribunal . . . en que el acusado tenga que comparecer el mandamiento de arresto, la denuncia, las declaraciones que se hubieren prestado, así como todas las fianzas u obligaciones por él exigidas para asegurar la comparecencia de testigos."

Como podrá observarse, hubiese sido posible, independientemente de las diferencias entre una "averiguación" y una "vista preliminar", asimilar este primer procedimiento al de California y establecer que el término de sesenta días de nuestro art. 448 comenzaba a contar desde que el juez, luego de la "averiguación", determinaba que existía causa probable contra una persona.([6])  Sin embargo, las extensas facultades concedidas a los fiscales y que en conjunto constituían una segunda manera de proceder, hicieron prácticamente imposible adoptar esa fórmula.   Los arts. 95 a 109 (34 L.P.R.A. secs. 171–184) autorizaron a este funcionario a ordenar citaciones de testigos, expedir órdenes de arresto, realizar investigaciones y examinar testigos.   El art. 98 le ordenaba presentar una acusación luego de examinar a los testigos "si se hubiere obtenido prueba suficiente de que el delito es tal como ha sido imputado o de haberse cometido un delito equivalente a delito grave, y existieren motivos verosímiles para creer en la culpabilidad del acusado".([7])   De lo contrario, y en cumplimiento del artículo siguiente, debería recomendar que el acusado fuera puesto en libertad.   El fiscal podía, además, fijarle fianza al acusado.   No hay una sola mención del término "detenido para responder" ("held to answer") en todos los artículos que gobernaban (y gobiernan) las facul-

---

([6]) Si se comparan los artículos citados con los correspondientes de California, se observará que, salvo las referencias a la vista preliminar, son prácticamente iguales.

([7]) El art. 70 ordena al fiscal radicar una acusación dentro de los veinte días siguientes a la encarcelación de una persona por orden de un juez.   Sobre la relación de este artículo con el 448, véase *Ex parte Colón*, 11 D.P.R. 429, 432 (1906).

tades de los fiscales. Por el contrario el art. 100 disponía que "Si resultare, sin embargo, del examen de los testigos que se ha cometido un delito público, y que hay causa suficiente para creer que el acusado es culpable de su perpetración, el fiscal ordenará el arresto del acusado, expidiendo al efecto un mandamiento de arresto".

¿Cómo aplicar entonces el inciso primero del art. 448 a una situación en que distintos funcionarios, utilizando distintas facultades, podían colocar a una persona en posición de tener que responder por la comisión de un delito público? Concebiblemente podían haberse establecido por la jurisprudencia un gran número de reglas que fijaran el punto de partida en cada caso dependiendo del tipo de intervención de jueces, fiscales y policías y de su alcance. Pero ese hubiese sido un proceso largo y penoso, repleto de dificultades administrativas y de tentaciones para el planteamiento de tecnicismos y la comisión de arbitrariedades. Por esos motivos probablemente (aunque sus razones nunca se dieron a conocer de manera explícita) este Tribunal desde la primera ocasión en que se enfrentó al problema, hace cincuenta y cinco años —*Pueblo* v. *Quilichini*, 7 D.P.R. 125, 127–128 (1904)—prefirió establecer una regla única que rigiera las actuaciones de todos los funcionarios judiciales y de investigación. Tanto en casos de delitos graves como de delitos menos graves, lo mismo cuando se presentara una denuncia como cuando se tratara de una acusación, y sin que causara diferencia alguna que la actuación inicial fuera de la responsabilidad de un juez, un fiscal o un policía, el arresto o detención de la persona por la comisión de un delito marcaría la fecha desde la cual se comenzaría a contar el término.([8])

---

([8]) En cuanto a la aplicación de la regla a casos de segunda acusación o segundo arresto por los mismos hechos, véanse *Pueblo* v. *Barrios*, 23 D.P.R. 831 (1916); *Pueblo* v. *Díaz*, 32 D.P.R. 888 (1924); *Pueblo* v. *Dávila*, 37 D.P.R. 889 (1928); *Pueblo* v. *Soto*, 40 D.P.R. 409 (1930); *Ex parte Sánchez*, 45 D.P.R. 40 (1933); *Pueblo* v. *Mercado*, 46 D.P.R. 825 (1934); *Pueblo* v. *Echevarría*, 60 D.P.R. 682 (1942); *Pueblo* v. *Comas*, 75 D.P.R. 413 (1953); *Pueblo* v. *Maldonado*, 77 D.P.R. 638 (1954).

Con la sola excepción de *Pueblo* v. *Carmen Centrale, Inc.*, supra, en la cual estaba afectada una corporación y no una persona natural, y de la cual nos ocuparemos más adelante, por lo menos en treinta y cinco sentencias (⁹) este Tribunal ha seguido ese criterio o ha dado por descontado que es el que debería seguirse. Y en *Pueblo* v. *Albino*, 38 D.P.R. 215, 218 (1928) se dijo con absoluta claridad:

"En el artículo 448 que se cita, se contienen dos casos de sobreseimiento. El primero cuando dentro de los sesenta días de haberse detenido a una persona para responder de delito, no se ha presentado acusación. El segundo, si en el término de ciento veinte días después de presentada la acusación, no se hubiera sometido al acusado a un juicio.

"Bajo el primero de esos preceptos legales, el término se cuenta, no desde la fecha de la ocurrencia del hecho denunciado, sino desde la fecha de la detención o arresto. Transcurridos esos sesenta días, el que fue detenido, quien conoce perfectamente la fecha de la detención, puede ejercitar su derecho de pedir el

---

(⁹) *Pueblo* v. *Quilichini, et al.*, 7 D.P.R. 126, 127–128 (1904); *Pueblo* v. *Quilichini*, 7 D.P.R. 215, 218 (1904); *Ex parte Lizardi*, 7 D.P.R. 360, 362 (1904); *Pueblo* v. *Salinas*, 9 D.P.R. 371, 374 (1905); *Pueblo* v. *Noble*, 9 D.P.R 388, 390 (1905); *Ex parte Leroy*, 17 D.P.R. 1047, 1052 (1911); *Pueblo* v. *Ayala*, 19 D.P.R. 936, 939–942 (1913); *Pueblo* v. *Alsina*, 22 D.P.R. 458, 461 (1915); *Pueblo* v. *Barrios*, 23 D.P.R. 831, 833 (1916); *Pueblo* v. *Fajardo*, 23 D.P.R. 885, 900–901 (1916); *Pueblo* v. *Carrasquillo*, 24 D.P.R. 781, 783–784 (1917); *Pueblo* v. *Bocanegra*, 27 D.P.R. 887, 889 (1919); *Pueblo* v. *Almodóvar*, 32 D.P.R. 829, 830–831 (1924); *Pueblo* v. *Díaz*, 32 D.P.R. 888, 889–890 (1924); *Pueblo* v. *Cruz*, 34 D.P.R. 211, 212–213 (1925); *Monserrate* v. *Corte*, 35 D.P.R. 367, 368 (1926); *Pueblo* v. *Petrovich*, 36 D.P.R. 609, 610 (1927); *Pueblo* v. *Dávila*, 37 D.P.R. 889, 890 (1928); *Pueblo* v. *Albino*, 38 D.P.R. 215, 218 (1928); *Pueblo* v. *Romero*, 39 D.P.R. 557, 561 (1929); *Pueblo* v. *De la Rosa*, 40 D.P.R. 69, 70 (1929); *Pueblo* v. *Soto*, 40 D.P.R. 409, 411 (1930); *Pueblo* v. *Ramos*, 40 D.P.R. 802, 803 (1930); *Ex parte Sánchez*, 45 D.P.R. 40, 42 (1933); *Corbet* v. *Corte*, 46 D.P.R. 255, 257 (1934); *Pueblo* v. *Mercado*, 46 D.P.R. 825, 827 (1934); *Pueblo* v. *Álvarez*, 50 D.P.R. 104 (1936); *Pueblo* v. *Álvarez*, 57 D.P.R. 770, 771 (1940); *Medina* v. *Rodríguez*, 57 D.P.R. 960 (1940); *Pueblo* v. *Ruiz*, 58 D.P.R. 639, 641 (1941); *Pueblo* v. *Echevarría*, 60 D.P.R. 682, 683 (1942); *Ferrer* v. *Corte*, 60 D.P.R. 624, 625 (1942); *Ex parte Mercado*, 63 D.P.R. 913, 914–915 (1944); *Pueblo* v. *Comas*, 75 D.P.R. 413, 415 (1953); *Pueblo* v. *Maldonado*, 77 D.P.R. 638, 640–641 (1954).

sobreseimiento. Esto depende del mismo interesado, pero no de la fecha que en la denuncia se fija a la comisión de los hechos." [10]

En *Pueblo* v. *Carmen Centrale, Inc.*, supra, se acusó a la mencionada corporación por una infracción a la Ley de Pesas y Medidas. Al comienzo de la vista la acusada interpuso una moción de archivo y sobreseimiento fundada en una supuesta violación del inciso primero del art. 448. Los arts. 453–460 del Código de Enjuiciamiento Criminal [11] establecían el procedimiento a seguirse contra las corporaciones. Disponía en síntesis que al hacerse una denuncia contra una corporación, el juez de paz o municipal debía citarla, a través de una presentación a uno de sus jefes, para que "comparezca ante él a contestar los cargos que contra ella se hagan" y en el día fijado debía "proceder a investigar el hecho que se denuncia, en la misma forma que si se tratare de un individuo particular, hasta donde fueren aplicables estos procedimientos". Luego de oídas las pruebas, y en vista de las declaraciones, el juez debía "certificar si existen o no causas suficientes para creer que la corporación es culpable del delito que se le imputa y debe remitir las declaraciones y la certificación al juez competente." Con vista a esa certificación "el fiscal debe presentar la correspondiente acusación como si se tratare de un individuo particular." Luego se procedía contra la corporación utilizando los trámites corrientes. Este procedimiento, aplicable a las corporaciones, tenía el efecto de limitar las facultades de los fiscales y colocaba exclusivamente en manos de los jueces la autoridad para determinar si existía causa contra una corporación. [12]

---

[10] En *Pueblo* v. *Bocanegra*, 27 D.P.R. 887, 889 (1919) resolvimos que el término de 120 días del segundo párrafo del art. 448 tampoco se cuenta desde la fecha de la comisión del delito.

[11] La Ley núm. 50 de 7 de mayo de 1937, (Leyes, pág. 173) derogó estos artículos. El procedimiento vigente consta en 34 L.P.R.A. sec. 1661.

[12] En *Pueblo* v. *Mayagüez Sugar Co., Inc.*, 37 D.P.R. 112, 113 (1927), se resolvió que prueba de la celebración de la vista preliminar era una condición precedente para seguir con éxito una acusación contra una corporación. Se añadió en *Pueblo* v. *West India Oil Co.*, 46 D.P.R. 124, 133 (1934) que la corporación renunciaba a ese procedimiento si no planteaba el defecto

En el caso contra la Carmen Centrale el juez de distrito recibió la certificación del juez municipal el 23 de junio de 1932 y el fiscal presentó su acusación el 11 de octubre siguiente. Este Tribunal dictaminó que al ser acusada de un delito una corporación tenía los mismos derechos que una persona natural y que, por consiguiente, el art. 448 era aplicable a las corporaciones. Rechazó el argumento de El Pueblo que negaba tal aplicación y el cual se fundaba en que una corporación no podía ser arrestada y que las palabras "held to answer" se referían exclusivamente a un arresto. Dijo el Tribunal por voz del Juez Asociado Sr. Wolf:

"Las palabras 'held to appear or answer' han sido interpretadas en el caso de *Mitchel* v. *Boxholm Co-operative Creamery,* 128 Iowa 706, 105 N. W. 323, o más bien dichas palabras han sido usadas por la legislatura para exigir una comparecencia o una contestación. El caso demuestra que las palabras 'held to answer' no significan necesariamente un arresto. Cuando una persona, natural o jurídica, está obligada a contestar una acusación o propensa a ser convicta, esa persona está 'held to answer.'

"\*       \*       \*       \*       \*       \*       \*

"En otras palabras, resolvemos que la iniciación de un proceso contra una corporación es 'holding it to answer.' La idea total del artículo 448 es que cuando una persona es llamada a comparecer a contestar, la acusación debe ser radicada dentro de sesenta días, y somos del criterio de que este término empieza a correr cuando el juez municipal pasa la certificación a tenor del artículo 457, supra." (46 D.P.R. 498–499 (1934).)

No hay nada en el caso de *Carmen Centrale* que sostenga la tesis de que es suficiente que un agente de orden público contemple la realización de actos delictivos para que la persona que los esté realizando se encuentre desde ese momento "held to answer". Aun en el caso especialísimo de una corporación dicha sentencia resuelve que tiene que *iniciarse*

ante el tribunal inferior. En *Porrata* v. *Figueroa,* 41 D.P.R. 150, 152 (1930) resolvimos que en ese procedimiento los jueces actuaban como jueces instructores (*committing-magistrates*).

*un proceso* y que el término comienza a contarse "cuando el juez municipal pasa la certificación a tenor del art. 457." En verdad, lo que hicimos en *Carmen Centrale* fue adoptar la regla general de California sobre "held to answer" para la situación particular de las corporaciones, debido probablemente a que en tales casos nuestro enjuiciamiento exigía específicamente que para el acto de determinación de causa probable, a cargo exclusivamente de los jueces, se citara a la corporación para que compareciera a contestar los cargos contra ella. Ese derecho nunca lo han tenido las personas naturales en nuestra jurisdicción.

La interventora en el presente recurso se apoya principalmente en la frase "propensa (sic) a ser convicta"([18]) utilizada en el caso de *Carmen Centrale*. En primer lugar debemos dar cumplimiento al conocido principio que obliga a fijar el alcance de las palabras utilizadas en una opinión judicial dentro del marco de los hechos específicos a que esa opinión se refiere. Es evidente que esas palabras, así consideradas, no sostienen la tesis de la interventora. Pero aun examinadas fuera de contexto, la situación no varía. Para que una persona esté "propensa a ser convicta" (aceptando por el momento la corrección de la frase) tiene necesariamente que haberse tomado algún tipo de acción oficial en su contra por la alegada comisión de un delito público. En otras palabras, tiene que haberse puesto en movimiento, de alguna manera, el mecanismo procesal que podría culminar en una convicción.

Prueba irrefutable de que *Carmen Centrale* en modo alguno modificó la regla general aplicable a las personas natu-

---

([18]) En la opinión en inglés el Juez Wolf se expresó así: "When a person, natural or artificial, is bound to answer a charge or be convicted, that person is held to answer". 46 P.R.R. 482. La frase "propensa a ser convicta" constituye en verdad un error de traducción. Dice el Diccionario de la Lengua Española (1956) que la palabra "propensa" significa "con inclinación o afecto a lo que es natural a uno;" y "propender" quiere decir "inclinarse uno a una cosa por especial afición, genialidad u otro motivo".

rales es que en por lo menos diez sentencias([14]) posteriores, algunas de ellas escritas por el Juez Wolf, este Tribunal computó el término de sesenta días a partir del arresto o detención de la persona afectada. En ninguna de ellas, al igual que había sucedido anteriormente, se cuestionó la corrección de esa fórmula por ningún juez de este Tribunal.

En 1952, no obstante, ocurrió un importante cambio en nuestro procedimiento criminal. En virtud de disposiciones de constitución y de ley, los fiscales perdieron sus facultades de ordenar arrestos. (Constitución, Art. 11, Sec. 10; 34 L.P.R.A. sec. 175.) Éstas se asignaron con carácter exclusivo a los jueces para ser usadas "únicamente cuando exista causa probable apoyada en juramento o afirmación." No se estableció, sin embargo, el requisito de vista preliminar y, por consiguiente, la oportunidad de la persona querellada de enfrentarse a la prueba en su contra para convencer al juez instructor de que no se ha cometido un delito, o de que si éste existe, ella no lo ha cometido. En la inmensa mayoría de los casos el querellado no está presente cuando el juez hace la determinación de causa probable y expide la orden de arresto. Por esta razón y por los motivos adicionales de que la actual fórmula es sencilla y precisa, ha cumplido a cabalidad su función durante más de medio siglo, y no ha habido propuestas legislativas de cambio, no creemos conveniente alterarla.

En los estados de la Unión se requiere terminantemente que la persona esté detenida para responder ("held to answer") o encarcelada ("committed") por orden de un magistrado para que comiencen a contar los términos que las leyes fijan para presentar la acusación.([15]) The American Law Institute, *Code of Criminal Procedure* (1930) págs. 311–316, 888–890; Monografía, *The Right to a Speedy Criminal Trial*, 57 Colum. L. Rev. 846, 847–850 (1957).

---

([14]) Véanse en el escolio 9 todos los casos posteriores al de *Carmen Centrale*.

([15]) Esa es también la ley en Inglaterra. Orfield, *Criminal Procedure from Arrest to Appeal* (1947) págs. 351–352.

Luego de un examen exhaustivo no hemos podido hallar una sola disposición constitucional o de ley ni una sola interpretación judicial que exijan comiencen a contarse los términos antes de tener lugar una de esas actuaciones oficiales. Por el contrario, la regla aceptada es que "bajo ninguna circunstancia surge el derecho a juicio rápido antes de que exista un cargo o un arresto, aun cuando las autoridades responsables del procesamiento (prosecuting authorities) hubiesen tenido conocimiento del delito mucho antes de esos actos." *The Right to a Speedy Criminal Trial*, supra, pág. 848; Monografía, *Justice Overdue, Speedy Trial for the Potential Defendant*, 5 Stan. L. Rev. 95, 99–100 (1952); *People* v. *Jordan*, 290 P.2d 484, 491 (Cal. 1955); *People* v. *Hildebrandt*, 129 N.Y.S.2d 48, 50 (1954) revocado por otros motivos en 126 N.E.2d. 377 (C.A.N.Y., 1955); cf. *Taylor* v. *United States*, 238 F.2d. 259, 262 (D. C. Cir. 1956). El Código de Procedimiento Criminal del American Law Institute, que sin duda recoge lo mejor de la experiencia norteamericana, recomienda en su sec. 292 que el término comience a contarse desde que la persona ha sido puesta bajo custodia ("committed to custody").

Todo lo anterior comprueba que la letra e historia del precepto, el criterio unánime e invariable de este Tribunal y la experiencia uniforme de los estados de la Unión son abiertamente contrarios a la interpretación que propone la acusada. Otras razones poderosas nos convencen de que debemos rechazar esa interpretación. Se prestaría, en ocasiones similares a la que estamos considerando, a una lamentable confusión entre el término de sesenta días del art. 448 y los períodos prescriptivos para los delitos que fijan otras provisiones del Código. 33 L.P.R.A. secs. 231–234; *Taylor* v. *United States*, supra, pág. 262. Peor aún, colocaría a los jueces de primera instancia y finalmente a este Tribunal en la dificilísima situación de tener que actuar continuamente como inspectores de todas las denuncias y acusaciones. Tendríamos que investigar todas las circunstancias que las rodean para hacer una determinación cabal en cada caso. ¿Cuándo tuvieron conoci-

miento las autoridades de la comisión del delito? ¿Quién obtuvo ese conocimiento? ¿En qué momento la información contenía todos los elementos del delito y a quién competía hacer esa determinación? ¿Qué constituiría causa justificada para excusar la dilación—dificultades administrativas motivadas por la congestión de casos; errores de un agente en la observación de los hechos o en el informe a su superior motivados por incompetencia, laxitud o corrupción; necesidad de posponer el arresto o detención para no malograr una investigación en escala mayor sobre actividades clandestinas tales como ventas de bebidas, narcóticos, y "bolita" o sobre actos subversivos? Es evidente que podrían multiplicarse los interrogantes y que los tribunales de primera instancia tendrían que celebrar largas vistas en numerosos casos para conocer esos hechos y que de ese modo quedaría drásticamente restringida la necesaria discreción que deben tener los funcionarios de orden público para investigar los delitos.

Obsérvese, por otro lado, que los beneficios para el ciudadano serían, con una sola excepción, muy remotos o especulativos. La garantía constitucional de juicio rápido y las concreciones legislativas de ese derecho, como la de nuestro art. 448, tienen tres propósitos fundamentales: evitar que se encarcele a una persona por largo tiempo mientras el juicio está pendiente; eliminar rápidamente la ansiedad, la sospecha pública y los daños económicos y morales que produce una acusación criminal que no se dilucida a tiempo; y proveer un juicio mientras la prueba está disponible, en otras palabras, evitar que por motivo del tiempo transcurrido los testigos se dispersen o sus recuerdos del suceso se tornen inciertos. *People* v. *Prosser*, 130 N.E.2d 891 (N. Y. 1955); *Ex parte Trull*, 298 Pac. 775, 777 (Kan. 1931); *United States* v. *Henning*, 15 F.2d. 760 (9º Cir. 1926). Las dos primeras consideraciones, obviamente, no tienen aplicación a las circunstancias de este caso ni sirven de apoyo a la propuesta de la interventora. Tampoco podemos presumir que por no arrestarse a una persona en el momento mismo en que un

agente de orden público la observa mientras comete un delito,. necesariamente se perjudique su defensa.

Parece innecesario decir que nada en esta opinión debe interpretarse en el sentido de impedir un remedio judicial para una situación realmente extraordinaria en la que se compruebe que deliberada e inexcusablemente o como resultado de una grave negligencia y luego de poseerse prueba de todos los elementos de un delito, se ha pospuesto el arresto de una persona o la presentación de una acusación en su contra, con el propósito o el efecto de obstaculizar su defensa, de crear un clima de opinión pública antagónico a ella o de turbar su tranquilidad por medio de un acosamiento continuo o una investigación afrentosa, todo ello en abierta vulneración de su derecho a un juicio rápido, imparcial y justo. Tal caso, sin duda excepcionalísimo en el sistema de justicia de Puerto Rico dada la reconocida probidad de nuestros funcionarios, requeriría un ulterior análisis de nuestras disposiciones de constitución y de ley.(16)  Cf. *Segarra* v. *Córdova, Juez*, 60 D.P.R. 468 (1942) ; *Pueblo* v. *Romero*, 39 D.P.R. 557 (1929) ; *Dyer* v. *Rossy*, 23 D.P.R. 772 (1916) ; *Pueblo* v. *Balzac*, 56 D.P.R. 649, 652 (1940) ; *Gerardino* v. *People of Puerto Rico*, 29 F.2d 517, 518 (1er. Cir. 1928). La existencia de esa posibilidad, más bien lógica que práctica, no puede, sin embargo, impulsarnos a desechar una regla que durante casi seis décadas ha regido nuestros procedimientos y que ha lo-

---

(16) En la ya citada monografía *Justice Overdue, Speedy Trial for the Potential Defendant*, se sugieren los siguientes remedios: 1—la doctrina de incuria (*laches*) utilizada ya en Inglaterra para estos propósitos; 2—el auto de mandamus; 3—la garantía constitucional del debido procedimiento de ley.  Se sugieren, además, varias propuestas de ley para resolver el problema.  Véanse, además, *Fouts* v. *United States*, 253 F.2d 215, 217 (6º. Cir. 1958) ; *State* v. *Milner*, 149 N.E.2d 189 (Ohio, 1958) ; *Taylor* v. *United States*, supra; *Harris* v. *Municipal Court*, 285 Pac. 699 (Cal. 1930) ; *United States* v. *Chase*, 135 F. Supp. 230 (N. D. Ill., 1955) ; *Ex parte State*, 52 So.2d 158 (Ala. 1951) como ejemplos de situaciones verdaderamente extraordinarias en las cuales se pretendió enjuiciar a los acusados luego de haber transcurrido muchos años desde la comisión del delito y de haberse presentado la acusación en su contra.  Es a situaciones graves como las que ilustran estos casos a las que nos referimos en el texto.

grado mantener efectivamente en esta área el difícil pero indispensable balance entre el interés de proteger la seguridad pública y el de salvaguardar la libertad individual.

*Se anulará la resolución recurrida y se devolverá el caso para ulteriores procedimientos compatibles con esta opinión.*